PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3006
_____

JEWISH HOME OF EASTERN PA,

Petitioner

v.

CENTERS FOR MEDICARE AND MEDICAID
SERVICES;
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondents
_____

On Petition for Review from an Order by the Secretary
of the Department of Health and Human Services
(No. 09-42)

Submitted January 27, 2011

Before:  FUENTES, CHAGARES, and ROTH, <u>Circuit
Judges</u>.

(Filed: February 2, 2011)

Christopher S. Lucas, Esquire
2917 Glenwood Road
Camphill, PA 17011
        Counsel for Petitioner

Alan C. Horowitz, Esquire
United States Department of Health & Human Services
Office of the General Counsel
150 Independence Mall West
The Public Ledger Building, Suite 418
Philadelphia, PA 19106
        Counsel for Respondent

_____

OPINION
_____

CHAGARES, Circuit Judge.

Jewish Home of Eastern Pennsylvania ("JHEP") petitions for review of a final decision of the Secretary of the Department of Health and Human Services affirming the imposition of civil monetary penalties for failure to be in substantial compliance with the Medicare and Medicaid Services participation requirements set forth in 42 C.F.R. § 483.25(h)(2). For the reasons that follow, we will deny the petition for review.

I.

JHEP provides nursing care to Medicare beneficiaries and, as a result, is required to comply with the mandatory health and safety requirements for participation in the

2

Medicare program. In order to participate in the Medicare program, JHEP must submit to random surveys conducted by state departments of health to ensure that it meets all of the program requirements. See 42 C.F.R. § 488.305. On December 9, 2005, the Pennsylvania Department of Health, acting on behalf of the Center for Medicare and Medicaid Services ("CMS"), conducted a survey of JHEP. The survey concluded that JHEP had eight regulatory deficiencies, including violations of 42 C.F.R. § 483.25(h)(2), which requires a facility to ensure that each resident receives adequate supervision and assistance with devices to prevent accidents. Based on those deficiencies, the CMS imposed a $350 per day fine from December 9, 2005 through January 26, 2006, totaling $17,150. On October 16, 2006, the CMS performed another survey of JHEP and found twelve deficiencies for which it imposed a $400 per day fine effective from October 16, 2006 through November 16, 2006, totaling $12,800.[1]

---

[1] Pursuant to 42 U.S.C. § 1395i-3(h)(2)(B)(ii), the CMS may impose a civil money penalty in an amount not to exceed $10,000 per day of noncompliance. There are two categories of monetary penalties: (1) "Penalties in the range of $3,050–$10,000 per day are imposed for deficiencies constituting immediate jeopardy," 42 C.F.R. § 488.438(a)(1)(i); and (2) "Penalties in the range of $50–$3,000 per day are imposed for deficiencies that do not constitute immediate jeopardy, but either caused actual harm, or caused no actual harm, but have the potential for more than minimal harm," 42 C.F.R. § 488.438(a)(1)(ii). The penalties imposed in this case fell into the latter category.

On August 9, 2006 and October 20, 2006, JHEP appealed both civil monetary penalties to an Administrative Law Judge ("ALJ"), arguing that the allegations of noncompliance were based on the inadmissible disclosure of "privileged" quality assurance records and that the monetary penalties violated its right to equal protection because they were the product of selective enforcement based on race and religion. The ALJ denied JHEP's motion to suppress the quality assurance records, which consisted of event report forms and witness interview statements that accompanied those reports (collectively, "Event Reports"). Prior to the administrative trial, JHEP stipulated that it failed to provide the necessary supervision or assistive devices to three of its residents and presented no testimony as to these residents. After a two-day trial in June 2008, the ALJ upheld the fines against JHEP and also found that JHEP was noncompliant in its care of two additional residents. The ALJ found that JHEP was not in substantial compliance with the participation requirements during the relevant time periods and declined to consider the equal protection claim because he lacked subject matter jurisdiction to hear substantive constitutional claims.

JHEP timely filed an appeal to the Departmental Appeals Board which, on June 18, 2009, affirmed both of the civil monetary penalties. Thereafter, on July 10, 2009, JHEP filed the current petition for review.[2]

II.

---

[2] We have jurisdiction over this petition pursuant to 42 U.S.C. § 1320a-7a(e).

On review by this Court, the Secretary's factual findings "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 42 U.S.C. § 1320a-7a(e). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (quotation marks omitted). We may overturn the Secretary's action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).

## III.

Notably, JHEP does not contest the finding that it was not in substantial compliance with the Medicare program during the relevant survey periods. Instead, JHEP argues that CMS's findings and penalties are invalid because they (1) are based on quality assurance documents that should not have been disclosed, and (2) are a result of racial and religious discrimination. We conclude that both of JHEP's grounds for review are unfounded.

## A.

JHEP maintains that the incident reports in question were generated by its Quality Assurance Committee, and as such, are subject to disclosure and use restrictions under the Federal Nursing Home Reform Amendments ("FNHRA"), 42 U.S.C. § 1396r(b)(1)(B). Section 1396r(b)(1)(B) mandates that the nursing facility have a quality assessment and assurance team that "meets at least quarterly to identify issues

5

with respect to which quality assessment and assurance activities are necessary" and "develops and implements appropriate plans of action to correct identified quality deficiencies." In order to promote an effective quality review process, the FNHRA provides that

> A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.

Id. The language of 42 U.S.C. § 1396r(b)(1)(B), as a result, limits the scope of protection from discovery to the records generated by the Quality Assurance Committee. See, e.g., State ex rel. Boone Ret. Ctr. v. Hamilton, 946 S.W.2d 740, 743 (Mo. 1997) (finding that 42 U.S.C. § 1396r(b)(1)(B) "protects the committee's own records — its minutes or internal working papers or statements of conclusions — from discovery. No honest reading of the statute, however, can extend the statute's privilege to records and materials generated or created outside the committee and submitted to the committee for its review.").

After reviewing the record presented, we hold that the documents in question were contemporaneous, routinely-generated incident reports that were part of the residents' medical records and were not minutes, internal papers, or conclusions generated by the Quality Assurance Committee. The ALJ found that the Event Reports were given to JHEP's Quality Assurance Committee at the time of the surveys and were not produced by or at the behest of the Quality Assurance Committee. JHEP has presented no evidence to

6

suggest otherwise. Notably, Dr. Barry Fogel's affidavit, upon which JHEP places much emphasis, simply does not state that the Event Reports were created by or at the direction of the Quality Assurance Committee. Appendix ("App.") 203.

Moreover, the Departmental Appeals Board pointed out that federal regulations require nursing home facilities to investigate and report incidents "involving mistreatment, neglect, or abuse, including injuries of unknown source, and misappropriation of resident property." 42 C.F.R. § 483.13(c)(2). As the Departmental Appeals Board reasoned, "[i]t would be strange indeed if the very documentation which a facility is required to generate for that purpose were also shielded from those very regulators whenever it has been reviewed by a [Quality Assurance] Committee . . . ." App. 13. For these reasons, we hold that the disputed evidence was not subject to the FNHRA disclosure restrictions. Accordingly, we conclude that the ALJ's findings are "supported by substantial evidence on the record considered as a whole." 42 U.S.C. § 1320a-7a(e).

## B.

JHEP also alleges that the issuance of civil monetary fines violated its right to equal protection because the fines were the result of selective enforcement based on race and religion.[3] We conclude that this argument is meritless and, as such, we will provide only a brief discussion.

---

[3] While JHEP is a non-denominational facility, JHEP argues that it may maintain an equal protection claim because of its association with a protected group — persons of Jewish ancestry.

7

Selective discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.  See Yick Wo v. Hopkins, 118 U.S. 356, 373 (1886); Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993).  To establish a selective enforcement claim, JHEP must show (1) that it was treated differently from another, similarly situated facility, and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right."  Dique v. N.J. State Police, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quotation marks omitted).  Hence, to maintain an equal protection claim of this sort, JHEP must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.  Snowden v. Hughes, 321 U.S. 1, 8 (1944).  JHEP must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects."  Wayte v. United States, 470 U.S. 598, 610 (1985) (quotation marks omitted).

JHEP relies upon three documents to prove its selective enforcement claim.  First, JHEP submits side-by-side comparisons of citations issued to JHEP and other local facilities.  Second, JHEP provides a statistical report which concluded that the number of citations issued to JHEP was high in comparison to other facilities surveyed from the Scranton Field Office and that the disparity was likely the result of bias and not likely the result of differences in the quality of care, error, or chance.  Third, JHEP presents the affidavit of an employee who claims that a CMS surveyor made a discriminatory statement in October 2004, over a year before the surveys in question.  Specifically, in surveying

8

whether JHEP provided activities on Saturdays for residents of all denominations, the surveyor was told that there was a Kiddush — a ceremony involving a blessing and food that all individuals were invited to regardless of their religious affiliations. According to the employee, the surveyor responded that she was Christian and would feel uncomfortable attending such an activity.

We hold that JHEP has failed to establish a claim for selective enforcement under the Equal Protection Clause. JHEP has not demonstrated that CMS issued fines with an discriminatory purpose. We find JHEP's reliance on the surveyor's alleged statement to be misplaced, as it was clearly taken out of context, was not contemporaneous to the surveys in question, and was not relevant or facially discriminatory. Additionally, JHEP has failed to show that it was treated differently from other similarly situated facilities. Therefore, we conclude that JHEP's equal protection claim has no merit.

## IV.

After considering all of JHEP's arguments, we will deny JHEP's petition for review.