**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT
_____

No. 12-4267
_____

MERIDIAN NURSING AND REHAB AT SHREWSBURY,
Petitioner

v.

CENTERS FOR MEDICARE & MEDICAID SERVICES;
UNITED STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
Respondent

_____

Petition for Review of an Order of the
Department of Health and Human Services
(Agency: HHS-1:C-12-355)

_____

Submitted under Third Circuit LAR 34.1(a)
on January 13, 2014

(Filed: February 3, 2014)

Before: RENDELL, ROTH and BARRY, Circuit Judges

_____

O P I N I O N
_____

**RENDELL,** Circuit Judge:

Meridian Nursing & Rehabilitation Center at Shrewsbury ("Meridian") petitions for review of the final order of the Department of Health and Human Services Departmental Appeals Board ("Board") affirming Administrative Law Judge ("ALJ") Richard J. Smith's refusal to vacate his dismissal of Meridian's appeal.[1] While we, along with the ALJ and the Board, recognize the severity of dismissal, for the reasons that follow, we will deny Meridian's petition to review the Board's order.

## I. *Background*

In a letter dated January 30, 2012, Meridian sought ALJ review of the Centers for Medicare and Medicaid Services ("CMS") imposition of civil money penalties resulting from three CMS findings of noncompliance by Meridian.[2] As noted by the Board, the request for review was signed by Andrew P. Aronson of Gluck Walrath LLP ("Gluck Walrath"). Aronson was head of Gluck Walrath's healthcare practice, and up to this point, was lead counsel for Meridian.

On February 8, 2012, the ALJ issued an initial docketing order ("Initial Order"). The Initial Order directed that "[a]ll counsel assigned to this case must file a notice of entry of appearance" within 10 days and that counsel "must confer with each other" prior to filing any requested motions with the ALJ. (App. 69.) The Initial Order directed the parties to submit motions for summary disposition and reports of readiness within 30

---

[1] The Board had jurisdiction pursuant to 42 C.F.R. § 498.80. We have jurisdiction pursuant to 42 U.S.C. § 1320a-7a(e).

[2] CMS's findings of noncompliance were based upon a survey conducted by the New Jersey State Department of Health and Senior Services on October 5, 2011. "This survey found that [Meridian] was not in substantial compliance with all participation requirements and the conditions at [Meridian] constituted immediate jeopardy to resident health and safety." (App. 40.)

days of the order's issuance.  The Initial Order specifically noted that it "adopts and incorporates the Civil Remedies Division Procedures (CRDP)."  The Initial Order further stated, "[t]he parties are reminded that the terms of this Order and the CRDP are enforceable pursuant to the authority set out in section 1128A(c)(4) of the Social Security Act, 42 U.S.C. § 1320a-7a(c)(4)."[3]  (App. 68.)  The Initial Order was addressed to Mr. Aronson at Gluck Walrath's listed address.

On February 10, 2012 counsel for Meridian filed a notice of appearance which read as follows:  "Please enter the appearance of Gluck Walrath LLP as attorneys for Petitioner Meridian Nursing & Rehabilitation Center at Shrewsbury in the above-captioned matter."  (App. 109.)  The notice was signed "Gluck Walrath LLP by Andrew Bayer."  (*Id*.)  Andrew Bayer is head of Gluck Walrath's litigation department, and planned to handle the matter going forward.

On March 8, 2012, pursuant to the Initial Order, CMS filed a readiness report and a motion for partial summary judgment or alternatively, motion for order requiring petitioner to submit a more definite hearing request.  Aside from its February 10 entry of appearance, Meridian made no further filing pursuant to the Initial Order.  Prior to CMS's March 8 filing, and pursuant to the Initial Order, counsel for CMS, Judy Wong Strobos, contacted Mr. Aronson to discuss the case.  At no time during their conversation did Mr.

---

[3] Both 42 U.S.C. § 1320a-7a(c)(4) and the CRDP authorize a presiding ALJ to impose sanctions on a party "for failing to comply with an order or procedure, failing to defend an action, or other misconduct as would interfere with the speedy, orderly, or fair conduct of the hearing."  42 U.S.C. § 1320a-7a(c)(4); *see also* CRDP § 17 (available at www.hhs.gov/dab/divisions/civil/procedures/divisionprocedures.html).

Aronson tell Ms. Strobos "that he was not the counsel of record, or that [she] should speak to Mr. Andrew Bayer about the case." (App. 368.)

On April 20, 2012, the ALJ issued an Order to Show Cause ("Order 1") as a result of Meridian's failure to file any preliminary motions, a readiness report or a response to CMS's filings. The ALJ noted Meridian's "responses are now past due" and suggested this unresponsiveness might be a result of "abandonment of its hearing request." (App. 143.) Accordingly, Order 1 indicated that continued noncompliance on Meridian's part might result in dismissal of the case for abandonment.[4] Order 1 gave Meridian until May 10, 2012 "to show cause why I should not dismiss this case for abandonment." (*Id.*) Order 1 includes Mr. Bayer and Mr. Aronson as addressees.

Upon receipt of Order 1, Mr. Aronson spoke to Mr. Bayer about the order. Mr. Bayer informed Mr. Aronson that he had not received it. Mr. Bayer then assigned Ryan M. Jones to file a response to Order 1, including a response to CMS's motion for partial summary judgment and a readiness report. Mr. Jones did so on May 8 by making three filings with the ALJ. While these filings attempted to respond to the Initial Order, they did not make any attempt to explain Meridian's failure to timely comply.

---

[4] 42 C.F.R. § 498.69 grants an ALJ authority to dismiss a case for abandonment and reads as follows:

> (a) The ALJ may dismiss a request for hearing if it is abandoned by the party that requested it.
> (b) The ALJ may consider a request for hearing to be abandoned if the party or its representative--
> (1) Fails to appear at the prehearing conference or hearing without having previously shown good cause for not appearing; and
> (2) Fails to respond, within 10 days after the ALJ sends a "show cause" notice, with a showing of good cause.

4

The ALJ responded on May 15 in a Ruling and Order ("Order 2") noting that Meridian's May 8 response "makes no attempt to explain or justify its serious failure to comply with the Order of February 8." (App. 16.) The ALJ then gave Meridian until May 31, 2012 to show good cause for its failure to comply with the Initial Order, noting that, "failure to do so will result in the immediate dismissal of this action." (*Id.*) Meridian did not respond. Accordingly, the ALJ dismissed the case by order on June 12, 2012 ("Dismissal Order"). Mr. Aronson, Mr. Jones and Mr. Bayer were all addressees on the Dismissal Order.

Both Mr. Aronson and Mr. Bayer claim to have heard nothing about the case until Mr. Jones reported to them on June 18, 2012, that the case had been dismissed. At this time, Mr. Bayer conducted a review of Mr. Aronson's file in the case and realized "there was a serious ongoing service issue." Appellant's Br. at 6. Specifically, Mr. Bayer had not received any of the filings or orders in the case since he entered his appearance on February 10, 2012. All of the filings in the case had gone to Mr. Aronson, who did not share them with Mr. Bayer because Mr. Aronson assumed he was receiving courtesy copies. Mr. Bayer recounted that he found Order 2 in Mr. Aronson's file at this time.

Meridian filed a motion to vacate the dismissal on June 19, 2012 and then a subsequent motion on July 9, 2012 to replace the June 19 filing. The July 9 filing was the first time Meridian attempted to explain its failure to comply with the ALJ's orders. Meridian argued that "Mr. Bayer was not properly served with any of the subsequent Orders entered by the Court or with any of the subsequent filings made by CMS in this appeal." (App. 263.)

5

On September 21, 2012 the ALJ denied Meridian's motion to vacate stating that the motion did not:

> achieve [Meridian's] necessary objective: the explanation or justification for its repeated failures to conduct its side of this litigation in a manner conducive to the speedy, orderly, and fair development of this case toward hearing. No reasonable definition of 'good cause' encompasses the lapses Petitioner describes and often attributes to others.

(App. 21.)

Meridian filed an appeal of the ALJ's decision with the Board. The Board reviewed these same facts and found that the ALJ did not abuse his discretion in dismissing the action. Specifically, the Board took note of CMS's argument that the problem was not a lack of service, but instead "'the complete lack of organization and communication' among the attorneys at the firm representing Meridian and their 'apparent lack of interest in pursuing Meridian's appeal.'" (App. 26-27.) The Board relied, in particular, on the fact that even after Order 1 put Mr. Bayer on notice that perhaps he was not receiving any filings, he did not conduct a search of Mr. Aronson's file until after the Dismissal Order had been issued, nearly two months later.

## II. *Standard of Review*

"The findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 42 U.S.C. § 1320a-7a(e). We will only overturn the Secretary's action if we find that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Jewish Home of Eastern PA v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 361 (3d Cir. 2012) (quoting Administrative Procedure Act, 5 U.S.C § 706(2)). This

6

standard of review is "narrow," and we should not substitute our judgment for that of the agency. *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003); *see also Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations.").

### III. *Discussion*

Given our standard of review and the undisputed facts, we find no basis for disturbing the decision of the Board. While not directly applicable since we are reviewing agency action, we will examine the dismissal under the *Poulis v. State Farm Fire & Cas. Co*. factors to determine whether it was warranted here. 747 F.2d 863, 868 (3d Cir. 1984). [5]

In *Poulis*, we considered the following factors that district courts should consider in deciding whether dismissal is an appropriate sanction in light of a party's failure to comply with court orders: (1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) a history of dilatoriness; (4) whether the attorney's conduct was willful or in bad faith; (5) alternative sanctions; and (6) meritoriousness of the claim. *Id*.

As to the extent of the party's personal responsibility, Meridian bears little personal responsibility for its counsel's inability to meet deadlines and comply with orders. However, we noted in *Poulis* that "a client cannot always avoid the consequences of the acts or omissions of its counsel." *Id*. Further, Meridian, through its counsel,

---

[5] We note that both parties briefed *Poulis v. State Farm Fire & Cas. Co.*, which makes it an appropriate marker for our analysis.

7

attributes the problem to "confusion" among its lawyers and a "problem with the service of the court notices." Appellant's Br. at 13. Meridian also seeks to point the finger for delay at CMS due to CMS's "vociferous procedural arguments to avoid a hearing on the merits." *Id.* We are not sure what Meridian seeks to gain by making this argument in light of the record, but we also do not see this factor weighing in favor of either side.

The second factor, prejudice to the adversary, weighs only slightly in favor of CMS. As CMS points out regarding the survey, its case would be prejudiced by the passage of time only because of the potential for a surveyor's lack of recollection. Appellee's Br. at 48. However, Meridian correctly notes that the survey was documented, and thus, the actual surveyor's recollection is of less importance. Appellant's Br. at 13. Nonetheless, we find that the second factor weighs slightly against Meridian because CMS will have to rely on those who handled enforcement to relay their recollections, including what facility staff said during the survey, after additional time has passed.

The third factor, a history of dilatoriness, weighs heavily against Meridian. As in *Poulis*, "this litigation has been characterized by a consistent delay" on Meridian's part. 747 F.2d at 868. While Meridian argues that it is not entirely responsible for the delay, it is hard to agree with that assertion based on the record. As noted by the ALJ and the Board, the problem was not with service, but rather the internal organization of the law firm representing Meridian.

Meridian does not dispute the facts recited *supra*, including that Mr. Bayer did not review Mr. Aronson's file upon realizing that Order 1 did not come to him, but rather to

8

Mr. Aronson. Stunningly, Mr. Bayer's review of Mr. Aronson's file in this matter did not occur until nearly two months later, on June 18, 2012, when Mr. Jones informed Mr. Bayer that the ALJ had dismissed Meridian's action. Not only was there a subsequent order in the interim – Order 2 – but zealous advocacy on behalf of one's client surely requires a request for a status update from Mr. Jones after his May 8 filing, presumably sometime in the month of May. Nothing in the record indicates that Mr. Bayer asked for such an update, and meanwhile Order 2 sat in Mr. Aronson's file while the May 31 deadline passed, ensuring that Meridian's case would be dismissed. This behavior equates to a history of dilatoriness.

The fourth factor, whether the attorney's conduct was willful or in bad faith, is neutral, although we are unimpressed by Meridian's failure to show any cause for the delay until its July 9 motion to vacate the dismissal, at which time it placed blame on a problem with service. Further, Meridian's contention on appeal that Mr. Bayer's entry of appearance disabled Mr. Aronson from taking any action in the matter, including "give or accept notice," is undermined by the fact that Mr. Jones handled two filings and never filed an entry of appearance for himself. Appellant's Br. at 18. Indeed, as noted by the Board, Mr. Bayer's filing appears to indicate that his entry of appearance was on behalf of Gluck Walrath, not solely himself. While we do not find that Meridian's conduct was in bad faith, the argument that Mr. Bayer was the only attorney able to give or accept notice in the case, is simply not supported by Gluck Walrath's actions. Indeed, as the Board wrote, "[w]hile we do not characterize counsel's conduct as being willful or in bad

9

faith, we do find the repeated attempts to attribute blame to the ALJ or CMS for their own negligence to be self-serving." (App. 34 (internal quotation marks omitted).)

Our consideration of the effectiveness of sanctions other than dismissal leads us to conclude that none existed. The ALJ acknowledged that his ultimate disposition of this matter was "severe," but had "no reluctance in concluding that its terms and its result are justified by the circumstances." (App. 20.) We agree.

Meridian's failure to comply lasted over the course of nearly four months and three orders, each of which was clear as to the response required. Meridian did not respond to two – the Initial Order and Order 2 – and responded inadequately to Order 1. Both Order 1 and Order 2 warned of the possibility of dismissal, and yet, neither was apparently enough to force Mr. Bayer or Mr. Aronson to focus their attention on the matter. Meridian urges that "[c]ounsel's persistence in trying [to] have this matter heard on the merits since its unfortunate dismissal, underscores the effectiveness of lessor [sic] sanctions." Appellant's Br. at 14. In light of the record, we view Meridian's persistence following dismissal as evidence that dismissal was the only option available to the ALJ.

Regarding the meritoriousness of Meridian's claim, like the Board, we express no opinion of the ultimate merits of the claim. Deciding the merits was up to the ALJ in this case, and unfortunately, due to Meridian's continued noncompliance, he was deprived of that opportunity.

IV. *Conclusion*

We conclude that the facts relied upon by the Board were supported by substantial evidence in the record and the Board's action was not arbitrary, capricious or an abuse of discretion. Accordingly, Meridian's petition for review of the Board's order is denied.