**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1878
_____

RONNIE SUBER; BONGAI MHLOYI; JEREMIAH MHLOYI,
individually and t/d/b/a "JB'S WEB"

v.

OFFICER WRIGHT; OFFICER KEUCH; OFFICER INGEMIE; OFFICER MILLER;
OFFICER SIMPKINS; THE CITY OF COATESVILLE; JOHN GUINTA

BONGAI MHLOYI; JEREMIAH MHLOYI, individually and t/d/b/a "JB'S WEB",
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-10-cv-03156)
District Judge:  Hon. James Knoll Gardner

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 10, 2013

Before:  MCKEE, Chief Judge, FUENTES, and CHAGARES, Circuit Judges.

(Filed: July 31, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Plaintiffs Bongai Mhloyi and Jeremiah Mhloyi, individually and together doing

business as "JB's Web," (hereinafter collectively referred to as "the Mhloyis") appeal the

District Court's grant of summary judgment to defendants Officer Robert Keuch, Officer

Shannon N. Miller, Officer Jeffrey J. Ingemie, Officer Claude Simpkins, and the City of

Coatsville. The Mhloyis argue that the District Court: (1) should have stricken the

defendants' brief from the record; (2) erred in finding that the plaintiffs could not sustain

an equal protection claim against the individual defendants; and (3) erred in finding that

the plaintiffs could not sustain an equal protection claim against the City of Coatsville.[1]

For the reasons that follow, we will affirm the judgment of the District Court.

## I.

We write solely for the parties and therefore recite only the facts that are necessary

to our disposition. The Mhloyis, a married couple, own and operate a bar that is open to

the public at large called JB's Web in Coatsville, Pennsylvania. The Mhloyis are

African-American, and the patrons of JB's Web are predominantly African-American.

Coatsville's Polish Club is located across the street from JB's Web and caters to a

predominantly Caucasian membership. The Polish Club is a private club not open to the

---

[1] In their brief, the Mhloyis state that, in addition to appealing from the District Court's February 28, 2013 Order granting the defendants' summary judgment motion, they also appeal the District Court's September 28, 2012 Order granting in part and denying in part the defendants' motion to dismiss. However, the Mhloyis' notice of appeal, filed on March 27, 2013, mentions only the defendants' motion for summary judgment, and makes no reference to the motion to dismiss, which would have been untimely in any event. See Fed. R. App. P. 3, 4. Furthermore, the Mhloyis' brief contains no substantive arguments challenging the District Court's decision on the motion to dismiss. Accordingly, the Mhloyis have waived their ability to challenge the District Court's September 28, 2012 order. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 202-03 (3d Cir. 2004) ("We have held on numerous occasions that '[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.'" (quoting Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994))).

2

public, and its members include police officers and the chief of the Coatsville police department.

Coatsville police officers operate by an informal practice of allowing private clubs, including the Polish Club, to handle their own internal security. Although Coatsville police officers conduct periodic walk-through "bar checks" of public bars, they do not conduct such checks on private clubs.

From 2005 to 2008, Coatsville police officers responded to a number of incidents in the vicinity of JB's Web, including incidents involving noise complaints, intoxicated patrons and open containers, theft, drug possession, and fights, including one stabbing. At various times, the police officers issued noise-ordinance citations to JB's Web, but all of them were subsequently dismissed when challenged by JB's Web in court. The police officers also prepared "Incident Investigation Reports" of each the incidents that occurred outside JB's Web. These reports did not result in citations to JB's Web. The District Court, viewing the evidence in the light most favorable to the nonmovants, reasonably inferred that the Coatsville Police Department sent both the reports and the citations to the Liquor Control Board ("LCB"), which, under Pennsylvania's "Nuisance Bar Program," reviews the operational record of a licensed establishment to determine whether to review an establishment's liquor license. See Suber v. Guinta, 927 F. Supp. 2d 184, 197 (E.D. Pa. 2013).

The Mhloyis received a letter from the LCB dated March 18, 2009, stating that the bar might cease to be eligible to hold a liquor license based on twelve incidents of disturbance that occurred at or immediately adjacent to JB's Web from September 2007

3

to March 2009. The letter stated that D Kendo Inc. ("Kendo"), the owner or operator of JB's Web, was operating pursuant to a Conditional Licensing Agreement for the licensing period beginning April 1, 2007, and that, in the time period since the LCB had approved the agreement, it had received notice of three incidents of loudspeaker violations from the Coatsville Police Department. A hearing before the LCB was held on September 17, 2009, and, although the District Court found that it was "not entirely clear from [the] record," it appears that Kendo's license was not revoked or suspended as a result of that hearing, and JB's Web remains in operation. Id.

On March 13, 2010, Coatsville police officers, including individual defendants Officer Keuch and and Officer Simpkins, participated in a "raid" or inspection of five to six bars in Coatsville, including JB's Web and the VFW, a private club whose clientele is predominantly African-American. The Polish Club was not included in the March 13, 2010 inspection.

The Mhloyis allege that the facts described above reflect a pattern of "selective enforcement" of laws by the individual defendants and the City of Coatsville against JB's Web because of its status as a predominantly African-American bar, in violation of the Mhloyis' equal protection rights. Specifically, the Mhloyis allege that the defendants wrote up citations and incident reports about JB's Web and sent them to the LBC in order to get JB's Web characterized as a "Nuisance Bar," which would result in the LBC's revocation of JB's Web's liquor license and the eventual shutdown of JB's Web. They allege that incidents that occur outside the bar are written up in a manner designed to attribute them to JB's Web rather than the Polish Club located across the street, and that

4

this disparate treatment is due to the Polish Club's predominantly white clientele and JB's Web's ownership by African-Americans and predominantly African-American clientele. They allege that these citations and incident reports demonstrate an ongoing pattern of harassment to carry out the City of Coatsville's allegedly racist policies.

## II.[2]

"We review the District Court's disposition of a summary judgment motion de novo, applying the same standard as the District Court." Doe v. Luzerne Cnty., 660 F.3d 169, 174 (3d Cir. 2011) (citations omitted). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences must be drawn in the light most favorable to the nonmoving party. Luzerne Cnty., 660 F.3d at 174.

"A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Id. at 175 (citations omitted). The nonmoving party cannot establish a genuine dispute as to a material fact by pointing only to unsupported allegations in the pleadings. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Rather, to defeat a motion for summary judgment, the nonmovant must "supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).

## III.

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

A.

The Mhloyis first argue that the District Court should have stricken the defendants' brief in support of their motion for summary judgment because the brief is devoid of citations to the record and is composed of "disparate bald and conclusory pronouncements" that the District Court should not have considered. Mhloyis' Br. 12. The Mhloyis admit, however, that the defendants' brief incorporated by reference a "Concise Statement of Material Facts," filed simultaneously with the brief.[3] See Doc. No. 33.

We agree with the District Court that it could properly consider the defendants' brief. Although a party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," the Supreme Court has held that this responsibility does not require that "the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex, 477 U.S. at 323. "On the contrary, Rule 56(c), which refers to 'the affidavits, if any' (emphasis added), suggests the absence of such a requirement." Id. Accordingly, Rule 56 does not require the defendants to cite to specific facts negating the existence of a genuine dispute of material fact, and the defendants' brief was adequate and properly considered by the District Court. See id.

---

[3] The Mhloyis argue that certain courts prohibit incorporation by reference, but no such rule exists in the Eastern District of Pennsylvania.

6

B.

The Mhloyis also assert that the District Court erred in granting the individual defendants summary judgment on their equal protection claim. They argue that the defendant police officers selectively enforced laws against JB's Web in a discriminatory manner because it was a bar owned and operated by African-Americans and predominantly frequented by African-American patrons.

To establish a selective enforcement claim, a party must demonstrate "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." Dique v. New Jersey State Police, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quotations omitted). Persons or parties are "similarly situated" for Equal Protection Clause purposes when "they are alike in all relevant aspects." Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008).

The Mhloyis allege that the Polish Club is similarly situated to JB's Web by virtue of its close geographical location and function as a bar. However, the record reflects that the Polish Club and JB's Web differ in several material respects unrelated to the race of their clientele. It is undisputed that the Polish Club is a private club, and it is therefore primarily responsible for its own security under the Coatsville police department's informal practice. By contrast, JB's Web, a public bar, is subject to police "bar checks," and Coatsville police officers are involved in security issues that arise at or around JB's Web.

7

Furthermore, the record reflects, and the Mhloyis do not dispute, that the Polish Club's membership includes several police officers and the police chief, and there is no evidence that the police frequent JB's Web for recreational purposes. See, e.g., Appendix ("App.") 318–19. This distinction provides an alternative, non-racial explanation for any disparate treatment by the police.

In addition, as the District Court observed, in order to show disparate treatment of the Polish Club and JB's Web, the Mhloyis must produce evidence demonstrating that similar incidents occurred in or around JB's Web and the Polish Club and the defendants elected to respond by enforcing violations only for those incidents relating to JB's Web and not against the Polish Club in situations where the Polish Club would be similarly culpable or responsible. See, e.g., Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 425 (3d Cir. 2003). The Mhloyis do not point to any fact in the record that reflects this type of disparate treatment. Indeed, upon an independent review of the record, we cannot find sufficient evidence to either establish or support a reasonable inference that any of the defendants responded to any noise complaints or incidents relating to the Polish Club differently than they responded to the noise violations and incidents that occurred in or around JB's Web.

In order to prove selective enforcement, a party must also "provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs., 693 F.3d 359, 363 (3d Cir. 2012). The party must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." Wayte v.

8

United States, 470 U.S. 598, 610 (1985).  Even if the Polish Club and JB's Web were similarly situated, the Mhloyis do not point to a shred of evidence in the record reflecting discriminatory intent on the part of the defendants; they merely allege, in briefs and depositions, that the defendants selectively enforced violations against JB's Web due to the race of its owners and patrons.  Unsupported and conclusory allegations, without more, are insufficient to raise a genuine dispute of material fact.  See Luzerne Cnty., 660 F.3d at 175; Olson, 101 F.3d at 951.  Accordingly, the District Court properly granted summary judgment to the individual defendants on the Mhloyis' equal protection claim.

C.

Finally, the Mhloyis argue that the District Court erred by misapplying the law to the facts in granting summary judgment to the City of Coatsville on the plaintiffs' equal protection claim.  Municipalities are persons within the meaning of 42 U.S.C. § 1983, and, accordingly, they may be held liable under § 1983 when the municipality itself causes the violation.  See Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir. 1995) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  However, the Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997) (citations omitted).  Rather, the Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Id. (citing, inter alia, Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)).  The Mhloyis do not cite to any evidence in the record that would give rise to a reasonable inference that there existed a municipal policy,

9

custom, or practice of race-based selective enforcement of violations against African-American establishments in Coatsville. The District Court properly concluded that the Mhloyis did not produce sufficient evidence to state a valid claim of municipal liability against the City of Coatsville.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.