BARBER, J.,
CONCURRING IN RESULT ONLY:
Because this subject matter will likely come back up in this and other cases, I would, go a step further than the majority and analyze the application of the FQAP.
As part of the Omnibus Budget Reconciliation Act of 1987, Congress enacted the Federal Nursing Home Reform Act (“FNHRA”) to “improve the quality of care for ... nursing home residents.” Pub.L. No. 100-203, §§ 4201-4218; H.R.Rep. No. 100-391, pt. 1, at 452 (1987). At issue in this case is a subsection of FNHRA, the Federal Quality Assurance Privilege — 42 U.S.C. Sections 1395i-3(b)(1)(B) (skilled nursing facilities) and 1396r(b)(l)(B) (nursing facilities) — which respectively provide:
A [skilled] nursing facility must maintain a quality assessment and assurance committee, consisting of the director of nursing services, a physician designated by the facility, and at least 3 other members. of the facility’s staff, which (i) meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary and (ii) develops and implements appropriate plans of action to correct identified quality deficiencies. A State or Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this sub-paragraph..
42 U.S.C. §' 1395i~3(b)(i )(B). The purpose of the FQAP is to “protect the [Quality Assurance] committee’s own records— its minutes or internal working papers or statements of conclusion — from discovery.” Jewish Home of E. PA v. Ctrs. for Medicare and Medicaid Servs., 693 F.3d 359, 362 (3d Cir.2012). The goal is to engender self-critical analysis and ultimately, improve the quality of nursing home residents’ health care.[27]
*87 A. Scope of the FQAP
This Court has yet to address the scope of the FQAP. Two state supreme courts and one federal appellate court, however, have addressed the issue — albeit reaching differing conclusions. The Missouri Supreme Court and the U.S. Court of Appeals for the Third Circuit narrowly construed the FQAP to only privilege documents that are “generated” by a nursing home’s quality assurance committee. See Jewish Home of E. PA v. Ctrs. for Medicare and Medicaid Servs., 698 F.3d 359, 362 (3d Cir.2012); State ex rel. Boone Ret. Ctr. v. Hamilton, 946 S.W.2d 740, 743 (Mo.1997) (en banc). The New York Court of Appeals extended Boone’s holding to privilege all documents created “by or at the behest of’ a nursing home’s quality assurance committee. See In re Subpoena Duces Tecum to Jane Doe, Esq., 99 N.Y.2d 434, 757 N.Y.S.2d 507, 787 N.E.2d 618, 623 (2003). I would adopt the former approach and hold that only documents generated by a nursing home’s quality assurance committee fall within the scope of the FQAP. “This statutory privilege' is exceedingly narrow.” Boone, 946 S.W.2d at 743.
B. The “Missouri” Approach ’
The Supreme Court of Missouri,. and subsequently the U.S. Court of Appeals for the Third Circuit, each narrowly construed the FQAP. See Jewish Home, 693 F.3d at 362; Boone, 946 S.W.2d at 743. Both courts limited the scope of the statute by holding that only reports which are “generated” by a nursing home’s quality assurance committee are covered by the FQAP. See Jewish Home, -693 F.3d at 362 (“The language of 42 U.S.C. § 1396r(b)(l)(B) ... limits the scope of protection from discovery to the records generated by the Quality Assurance Committee.”) (emphasis added); see also State ex rel. Borne, 946 S.W.2d 740,. 743 (finding that the FQAP “protects only the committee’s own records — its minutes or internal working papers or statements of conclusions from discovery.”).
Following the Supreme , Court of Missouri, the Third Circuit — the only federal appellate court which has construed the scope of 42 U.S.C. § 1396r(b)(l)(B) — held that the FQAP “limits the scope of protection from discovery to the’records generated by the Quality Assurance Committee.” Jewish Home, 693 F.3d at 362 (citing Boone, 946 S.W.2d at '743) (emphasis added). Quoting the Missouri Supreme Court, the Third Circuit agreed that “[n]o honest reading of the statute ... can extend the statute’s privilege to' records and materials generated .outside, the committee and submitted to the committee for its review.” Jewish Home, 693 F.3d at 362. I agree.
In Jewish Home, the 'documents, in question were “contemporaneous, routinely-generated incident reports that were part of the residents’ medical records.” Id. Because these documents were not “minutes, internal papers,, or conclusions generated by the Quality Assurance Committee,” the Third Circuit held that the documents were not protected .by the FQAP. Id. Likewise, the documents Breshers seeks to discover do not fall within the scope of the FQAP because they were not .generated by Appellants’ Quality Assurance Committee, nor are they minutes, internal papers or conclusions of the Quality Assurance Committee. Id.
*88 C. The “New York” Approach
New York’s highest court[28] opted for a broader interpretation of the FQAP. See In re Subpoena Duces Tecum to Jane Doe, Esq., 99 N.Y.2d 434, 757 N.Y.S.2d 507, 787 N.E.2d 618, 623 (2003) (“We read the language ‘records of such committee’ (42 U.S.C. § 396r[b][l][B][ii]) as encompassing within its parameters any reports generated by or at the behest of a quality assurance committee for quality assurance purposes.”); see also id. (“[C]ompilations, studies or comparisons of clinical data derived from multiple records, created by or at the request of committee personnel for committee use, are ‘records of such committee’ and entitled to protection from disclosure pursuant to federal law.”). Applying this standard, the Court of Appeals of New York found that the FQAP protected the nursing home’s monthly skin condition reports, pressure sore reports, monthly weight reports, and the list of facility-acquired infections — none of which were generated by the quality assurance committee. Id., 757 N.Y.S.2d 507, 787 N.E.2d at 623.
In Jane Doe, the parties agreed that the residents’, clinical records were not covered by the FQAP. The court noted that “such records do not acquire quality assurance protection merely because they are reviewed or used by a quality assurance committee. . Id.,, 757 N.Y.S.2d 507, 787 N.E.2d at 622. The parties additionally agreed that the work product of the quality assurance committee was privileged by the FQAP. Id. The controversy thus centered on “what documents or reports constitute ‘records of such committee’ ” under 42 U.S.C. § 1396r(b)(l)(B)(ii). Id. The petitioner therein argued that because the nursing home’s incident reports, infections reports, and the like were derived from clinical records that were not privileged by the FQAP, they should likewise not fall within the ambit of the FQAP. Id., 757 N.Y.S.2d 507, 787 N.E.2d at 623. Ultimately, the court determined:
While we agree with the Missouri court and petitioner that the federal protection is narrow, we decline to adopt the Boone standard because the federal statute does not restrict quality assurance records to only those reports created by quality assurance committee members themselves. We read the language “records of such committee” (42 USC § 1396r [b][l][B][ii]) as encompassing within its parameters any reports generated by or at the behest of a quality assurance committee for quality assurance purposes.
Id. I disagree. Extending the FQAP to encompass any reports generated “at the behest of’ a nursing home’s quality assurance committee has troubling implications.[29] It runs' headlong into decades of Kentucky and federal jurisprudence that have narrowly construed the'scope of privileges.[30] Furthermore, I am not convinced by Appellants’ conjecture that the quality of nursing home care will decline for fear *89 of litigation if this Court were to adopt a narrow construction of the FQAP.[31] I recognize that the purpose of the FQAP is to encourage, self-critical analysis; however, the ultimate goal is to “improve the quality of care for ... nursing home residents.” H.R.Rep. No. 100-391, pt. 1, at 452 (1987). Thus, as previously noted, Appellants’ “fear of reprisal” is by no means absolute, and must be balanced against the fundamental objective of the FQAP — improving quality of care. In that vein, I believe that Boom’s construction more accurately reflects Congress’s intent to privilege a narrow set of information, and allows self-critical- evaluation without overprotecting — under the auspice of “quality control” — information such as that at issue .in the case at bar.
Moreover, although Appellants rely' heavily on Jane Doe’s holding, they failed to take heed of the New York court’s warning: “[f]or the future, we. recommend that a party seeking to protect documents from disclosure compile a privilege log in order to aid the court in its assessment of a privilege claim.” Id. The Court of Appeals rejected Appellants’ position for this very reason. Additionally, despite. Appellants’ ipse dixit argument to the contrary,[32] privileges are strictly construed under both federal and Kentucky law. See Collins v. Braden, 384 S.W.3d 154, 159 (Ky.2012); Sisters of Health Sys., Inc. v. Raikes, 984 S.W.2d 464, 468 (Ky.1998) (quoting Trammel v. United States, 445 U.S. 40, 45, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (“Privileges should be strictly construed because they contravene the fundamental principle that ‘the public ... 'has a right to every man’s evidence.” ’)). Appellants disregard established federal and Kentucky case law by arguing that the FQAP preempts Kentucky law, and hence, should not be strictly construed. Confusingly, Appellants offer no federal authority in support of this contention, except to say that privileges should be determined on a case-by-case basis. Furthermore, their argument disregards decades of Supreme Court jurisprudence that has narrowly construed privileges. See Trammel, 445 U.S. at 50, 100 S.Ct. 906 (1980) (holding that privileges must be “strictly construed”); id. at 50, 100 S.Ct. 906 (“Exclusionary rules and privileges contravene the fundamental principle that ‘the public-... has a right to every man’s evidence.”’) (quoting U.S. v. Bryan, 339 U.S. 323, 331, *90 70 S.Ct. 724, 94 L.Ed. 884 (1950)); see also Swidler & Berlin v. United States, 524 U.S. 399, 411, 118 S.Ct. 2081, 141 L.Ed.2d 379 (O’Connor, J., dissenting) (noting that the Supreme Court has historically construed the scope of privileges narrowly); Jaffee v. Redmond, 518 U.S. 1, 19, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (Scalia, J., dissenting) (pointing to the Supreme Court’s history of narrowly construing privileges); Univ. of. Pa. v. EEOC, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (narrowly construing common-law privilege).
The only case cited in support of Appellants’ broad interpretation is Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., a Sixth. Circuit opinion which stands for the proposition that privileges should be determined on a “case-by-case” basis. See 332 F.3d 976, 979-80 (6th Cir.2003). I do not disagree. However, Goodyear Tire is inapposite to the current controversy. The quoted language from Goodyear Tire is referring to the recognition of new privileges, not the construction of existing ones;[33] Id: at 980. Accordingly, in the absence of authority to the contrary, this Court should defer to the “fundamental principle that the public ... has a right to every man’s knowledge.” See Trammel, 445 U.S. at'50, 100 S.Ct. 906 (internal quotation omitted). Privileges, being “in derogation of the search for truth,” are not “expansively construed.” United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The FQAP is no exception.
In Boone and Jane Doe, the high courts of Missouri and New York each readily acknowledged that they were dealing with a case of first impression that had yet to be settled by a federal court.[34] Since that time, however, the Third Circuit addressed the issue in Jewish Home, and adopted Boone’s narrow construction of 42 U.S. § 1396r(b)(l)(B), which “limits the scope of protection ... to the records generated by the Quality Assurance Committee.” Jewish Home, 693 F.3d at 362 (citing Boone, 946 S.W.2d at 743 (emphasis added)). For the reasons discussed herein, I agree and would adopt the narrow construction of the FQAP set forth in Boone and Jewish Home.
Therefore, to the extent that the records sought to be discovered by Breshers were not generated by Appellants’ Quality Assurance Committee, and are not “minutes or internal working papers or statements of conclusion,” I would hold that they are not covered by the FQAP, and hence, are discoverable. Jewish Home, 693 F.3d at 362. Therefore, I would go further than the majority by adopting this application of the FQAP and would-, thus, instruct the courts below to proceed accordingly.
/s/John D. Minton, Jr. CHIEF JUSTICE
Cunningham and Venters, JJ., join.

. I do agree — subject to a caveat — with Appellants' statement that "[t]he Federal Quality Assurance Privilege is intended to allow a health care provider self-critical analysis with the goal of improved care without fear of the process being used to punish the health care provider.” However, "fear'of reprisal” is by no means absolute, and must be balanced with the FNHRA’s ultimate goal of "im-prov[ing] the quality of care for ... nursing *87 home residents.” H.R.Rep. No. 100-391, pt. 1, at 452 (1987). -

.New York’s court of last resort is the Court of Appeals of New York. For the opinion, see In re Subpoena Duces Tecum to Jane Doe, Esq., 99 N.Y.2d 434, 757 N.Y.S.2d 507, 787 N.E.2d 618 (2003). Additionally, Appellants rely on a lower court decision from Massachusetts to bolster their argument in favor of a broad interpretation of the FQAP. See Evans v. Quaboag on the Common, Inc., et al., 26 Mass.L.Rptr. 372 (Superior Ct. Mass Dec. 7, 2009). We find neither of these cases controlling, nor convincing.

. Not the least of which is what precisely does "at the behest of” mean.

. Kentucky has traditionally allowed a very limited number of privileges. See, e.g., KRE 501-11. For example, this Court recently declined to recognize a physician-patient privilege. See Caldwell v. Chauvin, 464 S.W.3d 139, 142-43 (Ky.2015).

. Of note, we have rejected a similar argument in the context of the peer-review privilege and medical negligence claims. See Sisters of Charity Health Sys., Inc. v. Raikes, 984 S.W.2d 464, 470 (Ky.1998); see generally KRS 311.377(2).

. Appellants argue that the FQAP preempts Kentucky’s long held practice of strictly construing privileges, but cites no authority on point to bolster their contention. This however, should not be a point of contention, because the Court of Appeals readily acknowledged that the FQAP preempts state law. Court of Appeals Order at 7. Appellants simply claim that because the FQAP preempts state law, it must be broadly construed to privilege all quality assurance documents. In re Jane Doe, a case upon which Appellants heavily rely, does not support their assertion. See In re Subpoena Duces Tecum to Jane Doe, Esq., 99 N.Y.2d 434, 757 N.Y.S.2d 507, 787 N.E.2d 618, 622 (2003) (“A facility may not create a privilege where none would otherwise exist merely by assigning the duty for compliance or compilation to a quality assurance committee.”). The FQAP's broadest interpretation can be found in In re Jane Doe, but even New York’s highest court limited the privilege to "any reports generated by or at the behest of a quality assurance committee.” Id., 757 N.Y.S.2d 507, 787 N.E.2d at 623. Here, Appellants seek an even broader interpretation from this Court, and neglect to address the only federal casé interpreting the FQAP, which supports a contrary construction. See Jewish Home of E. PA v. Centers for Medicare and Medicaid Services, 693 F.3d 359 (3d Cir.2012).

. See Goodyear Tire, 332 F.3d at 980 (“[T]he . recognition of a privilege should be judged on a case-by-case basis and weighed against the public interest.”).

. See Boone, 946 S.W.2d at 742 ("This is a case of first impression. No federal court has interpreted theses statutes); In re Jane Doe, 757 N.Y.S.2d 507, 787 N.E.2d at 621 (”[N]either this Court nor any federal court has previously interpreted [the FQAP]).