**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-2399

STATION MANAGEMENT CONSULTANTS, INC., d/b/a Sunoco,

Petitioner

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES FOOD AND DRUG ADMINISTRATION

On Petition for Review of an Order of the Department of Health and Human Services
Departmental Appeals Board, Appellate Division
(FDA-1 : DAB No. 20-2996)
Administrative Law Judge: Catherine Ravinski

Submitted under Third Circuit L.A.R. 34.1(a)
on April 19, 2021

Before: AMBRO, RESTREPO and RENDELL, <u>Circuit Judges</u>

(Opinion filed: May 25, 2021)

OPINION*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

In 2019, an Administrative Law Judge imposed a 30-day No-Tobacco-Sale Order (NTSO) against Station Management, the operator of a gas station and store, for repeatedly selling tobacco products to minors and failing to check photo identifications. The Department of Health and Human Services Departmental Appeals Board (the "Board") affirmed and Station Management now petitions to us. Discerning no reason to disturb the Board's decision, we deny the petition for review.

## I.

We have jurisdiction to review the Board's decision imposing an NTSO on Station Management, which operates in Darby, Pennsylvania and requested a hearing in its answer to the agency's complaint. *See* 21 U.S.C. § 333(f)(6) (permitting those who requested a hearing and were aggrieved by an NTSO to "file a petition for judicial review" in the circuit where they reside or transact business); *see also id.* at § 333(f)(8) (providing that "[p]rior to the entry of a no-sale order . . . a person shall be entitled to a hearing pursuant to the procedures established through regulations of the Food and Drug Administration for assessing civil money penalties"); 21 C.F.R. § 17.47(a) (providing for an appeal to the Board); *id.* at § 17.51(a) (providing that "[t]he final decision of the Commissioner of Food and Drugs or other entity deciding the appeal (currently the [Board]) constitutes final agency action from which a respondent may petition for judicial review under the statutes governing the matter involved"); *id.* at § 17.51(c) (providing that "[e]xhaustion of an appeal to the entity deciding the appeal (currently the [Board]) is a jurisdictional prerequisite to judicial review").

While § 333 does not explicitly provide a scope or standard of review, we conclude that our review is analogous to other cases involving penalties imposed by the Department of Health and Human Services and review of agency actions more generally. We will overturn the action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 361 (3d Cir. 2012) (quoting 5 U.S.C. § 706(2)), and we will uphold factual findings as long as they are supported by substantial evidence in the record, *see id.*; *Arkansas v. Oklahoma*, 503 U.S. 91, 112–13 (1992) (criticizing an appellate court for "disregard[ing] well-established standards for reviewing the factual findings of agencies and instead ma[king] its own factual findings," . . . as "we have long recognized the 'substantial evidence' standard in administrative law"); *Dia v. Ashcroft*, 353 F.3d 228, 248 (3d Cir. 2003) (en banc) (noting that "[t]he substantial evidence standard has historically been, and continues to be, the standard governing the relationship between administrative agencies and courts of review"); *accord TMJ Implants, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 584 F.3d 1290, 1299 (10th Cir. 2009) (applying the same standard in a petition for review of monetary penalties brought under § 333(f)(6)).

## II.

Acting under authority from Congress, the agency[1] promulgated regulations prohibiting retailers from selling cigarettes and smokeless tobacco products to minors and

---

[1] In general, statutory requirements are directed to the Secretary of Health and Human Services. In practice, the regulations and actions relevant here are often more specifically linked to the Food and Drug Administration (within the Department of Health and Human Services) or the Center for Tobacco Products within the Food and Drug Administration.

requiring retailers to verify the age of every purchaser with photo identification unless the purchaser is over the age of 26. *See* 21 U.S.C. § 387f(d)(1) (providing that the Secretary may "by regulation require restrictions on the sale and distribution of a tobacco product"); 21 C.F.R. §§ 1140.14(a)(1)–(2) (providing that "[n]o retailer may sell cigarettes or smokeless tobacco to any person younger than 18 years of age" and that "each retailer must verify by means of photographic identification containing the bearer's date of birth that no person purchasing the product is younger than 18 years of age," except for mail-order sales or sales to "any person over the age of 26").[2]

In addition to monetary penalties, the agency is empowered to impose an NTSO for five or more "repeated violations" of these regulations over a 36-month period. 21 U.S.C. § 333(f)(8); Pub. L. No. 111-31, 123 Stat. 1838 (2009) (requiring the Secretary to "issue guidance . . . defining the term 'repeated violation' . . . as including at least 5 violations of particular requirements over a 36-month period at a particular retail outlet that constitute a repeated violation"). In imposing an NTSO, the agency "shall take into account the nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability to pay, effect on ability to continue to do business, any history of prior such

---

*See generally* 21 U.S.C. § 387a(e) (directing the Secretary to establish the Center for Tobacco Products within the Food and Drug Administration). We generally refer to the "Secretary" or the "agency" for convenience when referring to any of these parties where the particular actor is not critical to our analysis.

[2] Congress recently raised the minimum age for tobacco purchases from 18 to 21. *See* Pub. L. No. 116-94, § 603(a)(2), 133 Stat. 3123 (2019). At the time of Station Management's violations, the minimum age was still 18.

violations, the degree of culpability, and such other matters as justice may require." 21 U.S.C. § 333(f)(5)(B).

The agency also considers whether the retailer has taken "effective steps" to prevent violations, including written policies, employee training and sanctions, and ID verification. Pub. L. No. 111-31, 123 Stat. at 1839 (requiring the Secretary to issue guidance providing for the Secretary to consider these factors in determining whether to impose an NTSO); *see also* Food and Drug Administration, *Civil Money Penalties and No-Tobacco-Sale Orders for Tobacco Retailers (Revised)* 11 (Dec. 2016), https://www.fda.gov/media/80888/download. The agency has in the past announced its intention to seek a 30-day period for a retailer's first NTSO, though acknowledging it may sometimes vary downward based on the statutory factors described above. *See* Food and Drug Administration, *Determination of the Period Covered by a No-Tobacco-Sale Order and Compliance with an Order: Guidance for Tobacco Retailers* 3–4 (Aug. 2015), https://www.fda.gov/media/93328/download.

## III.

The facts underlying Station Management's violations are not meaningfully in dispute, so we do not recount them in detail here. On appeal, Station Management essentially contends the Board erred in imposing the NTSO and failed fully to consider evidence in the record, particularly: (1) evidence of policies and remedial procedures Station Management has in place to prevent violations, including termination of one offending "errant" employee; (2) the fact that several of the violations occurred as part of the same "episodes" (*i.e.*, that selling tobacco to one minor customer and also failing to

5

check her ID counted as two violations); and (3) Station Management's financial hardship. We are not persuaded that any of Station Management's arguments support disturbing the Board's decision.

First, the Board considered Station Management's policies and procedures, specifically listing and summarizing several exhibits in the record. A.R. at 16. It nonetheless declined to disturb the Administrative Law Judge's finding that these policies and procedures were not effective and further concluded Station Management "has not shown how the additional measures it took were effective at ensuring its staff complies with the Act and regulations." *Id.* at 17–18. Similarly, it expressly considered Station Management's termination of the offending "errant" employee but concluded that the company was nonetheless responsible for the actions of those it employs. *Id.*

Second, the Board clearly understood that some of the violations occurred as part of the same "episodes." Nonetheless, it concluded that the statute did not explicitly compel consideration of this fact and that Station Management "did not address how committing multiple violations in a single inspection somehow reduces its culpability or mitigates the penalty under any of the other [statutory] factors." *Id.* at 19.[3]

---

[3] Station Management does not directly challenge the Board's counting of the sale and ID failures in one transaction as separate violations, and instead it argues simply that the number of transactions, in addition to the number of violations, should have affected the decision to impose a 30-day NTSO. We therefore presume without deciding that the Board's method of counting these violations is appropriate. *Cf. Orton Motor, Inc. v. U.S. Dep't Health & Hum. Servs.*, 884 F.3d 1205, 1210–11, 1214 (D.C. Cir. 2018) (rejecting a challenge that the relevant Act "does not permit the Center's practice of charging multiple violations arising from a single inspection or transaction" under analogous circumstances where a retailer was charged with multiple violations for "the sale to a minor and the failure to check identification").

6

Third, the Board expressly considered Station Management's argument that the NTSO would impose undue financial hardship because it is operating at a net loss. *Id.* at 15–16. Relying on record evidence (including the "profit and loss statements from 2017 and 2018") analyzed by the Administrative Law Judge, the Board concluded that Station Management did not support its assertion that the 30-day NTSO would jeopardize its ability to continue to operate. *Id.*

\* \* \* \* \*

In sum, we conclude that the Board's decision was reasonable and the findings it relied on were supported by substantial evidence in the record. We thus deny the petition for review.

7