OPINION OF THE COURT
 

 Graffeo, J.
 

 In this appeal, we are asked to determine if certain nursing home records are immune from disclosure in response to subpoenas issued by a grand jury conducting a Medicaid fraud investigation. We conclude that federal law protects from disclosure those records created or generated for quality assurance purposes at the facilities.
 

 As part of an investigation into resident care initiated by the Medicaid Fraud Control Unit of the Attorney General’s office (MFCU), an Erie County grand jury issued a series of subpoenas seeking records from three nursing home facilities: The Waters of Orchard Park, The Waters of Salamanca and The Waters of Aurora Park. The subpoenas sought 59 categories of documents and reports involving various aspects of facility management and resident care and treatment. Petitioner The Park Associates, Inc., a nursing home consultant retained by the three facilities, moved to quash portions of the subpoenas on the basis that certain records were protected from disclosure under New York State Public Health Law § 2801
 
 et seq.
 
 and the Federal Nursing Home Reform Act, codified in 42 USC § 1396r.
 

 Five categories of documents were in dispute before Supreme Court: incident/accident reports, monthly skin condition and
 
 *437
 
 pressure sore reports, monthly weight reports, infection control reports and lists of any facility-acquired infections. Petitioner asserted that the records and reports at issue were generated by the facilities’ quality assurance committees and therefore the nursing homes were entitled to rely on the privilege extended to quality assurance committee work product under state and federal law.
 

 MFCU contended that the contested records were not subject to any quality assurance privilege because they related to a Medicaid investigation and, furthermore, the nursing homes were required under state regulation to maintain such records. MFCU also asserted that the documents were not generated by quality assurance teams.
 

 Supreme Court denied the motion, finding that the subpoenas related to records maintained in accordance with particular state regulations rather than exclusively for quality assurance purposes. The Appellate Division affirmed and ordered disclosure of the documents. The Court rejected petitioner’s Public Health Law privilege claim as inapplicable to nursing home facilities. With respect to petitioner’s assertion of privilege under federal law, the Appellate Division concluded that the disputed records did not fall within the scope of the privilege extended to quality assurance committees. This Court granted petitioner leave to appeal.
 

 The federal privilege upon which petitioner relies
 
 [1]
 
 is encompassed in the Federal Nursing Home Reform Act (FNHRA), enacted as part of the Omnibus Budget Reconciliation Act of 1987 (Pub L 100-203, §§ 4201-4218). The FNHRA was enacted to address the federal government’s concerns regarding the distribution of public monies to those nursing facilities participating in the Medicaid program with poor quality of care standards and to “improve the quality of care for Medicaid-eligible nursing home residents, and either to bring substandard facilities into compliance with Medicaid quality of care requirements or to exclude them from the program” (HR Rep No. 100-391 [I], 100th Cong, 1st Sess, at 452, reprinted in 1987 US Code Cong & Admin News, at 2313-1, 2313-272). To accomplish its aim, the FNHRA established requirements geared toward achieving the “elaborate oversight and inspection of nursing homes that participate in Medicare and Medicaid programs”
 
 (Blue v Koren,
 
 72 F3d 1075, 1079 [2d Cir 1995]).
 

 
 *438
 
 Under the Act, states must conduct and certify the results of unannounced annual standard surveys. The surveys are designed “to detect facilities where residents are not receiving quality care” and permit limited enforcement resources to be targeted on substandard quality facilities (HR Rep No. 100-391 [I], 100th Cong, 1st Sess, at 468, reprinted in 1987 US Code Cong & Admin News, at 2313-288). In evaluating the quality of care provided, the survey process examines indicators such as medical and rehabilitative care and infection control, written plans of care and audits of residents’ assessments
 
 (see
 
 42 USC § 1396r [g] [1] [A]; [2] [A] [i], [ii]). Furthermore, the FNHRA mandates that each state give its Medicaid fraud control unit access “to all information of the State agency responsible for” such surveys
 
 (see
 
 42 USC § 1396r [g] [5] [D]). In New York, the Office of Welfare Inspector General, working within the office of the Deputy Attorney General for Medicaid Fraud Control, possesses broad authority to uncover fraud and abuse in nursing homes, including the power to investigate and prosecute illegal acts perpetrated by recipients of public assistance services
 
 (see
 
 Executive Law § 74 [3];
 
 see also
 
 Executive Law § 48). The statutory design thus envisions federal and state cooperation to reach its goals.
 

 The FNHRA also mandates that every nursing and skilled nursing facility which accepts Medicaid or Medicare funding “must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident” (42 USC § 1396r [b] [1] [A] [nursing facility]; 42 USC § 1395Í-3 [b] [1] [A] [skilled nursing facility]). To advance this objective, a nursing home is required to maintain a quality assessment and assurance committee to identify and develop plans to correct deficiencies in the quality of care provided to residents
 
 (see
 
 42 USC § 1396r [b] [1] [B]; § 1395Í-3 [b] [1] [B]). Quality assurance committees help ensure “both quality of care and quality of life in nursing homes” (Report of Off of Inspector Gen, Dept of Health and Human Servs,
 
 Quality Assurance Committees in Nursing Homes,
 
 Jan. 2003, at i [republished at <http://www.courts.state.ny.us/ reporter/webdocs/Quality_Assurance.pdf >]).
 

 In 1990, to further strengthen quality assurance procedures, Congress amended the quality assurance requirements to provide that “[a] State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph” (42 USC § 1396r
 
 *439
 
 [b] [1] [B] [ii]; § 1395Í-3 [b] [1] [B] [ii]). Thus, quality assurance committees are “key internal mechanisms that allow nursing homes opportunities to deal with quality concerns in a confidential manner and can help them sustain a culture of quality improvement”
 
 (Quality Assurance Committees in Nursing Homes, supra
 
 at 2). Petitioner relies on the 1990 amendment in arguing that the disputed documents are privileged from disclosure as records generated by the quality assurance committees and used in the facilities’ quality assurance processes.
 

 Although neither this Court nor any federal court has previously interpreted this federal statutory exemption, we have generally examined the protection afforded to quality assurance committee records in the context of CPLR article 31 discovery provisions. While these cases do not involve the public interest underlying the audit and investigatory authority of MFCU, the purpose of hospital-based quality assurance committees is similar to that of quality assurance committees functioning in nursing homes — to ensure the proper delivery of services and the maintenance and improvement in quality of care. We noted that the State Education Law privilege which attaches to the proceedings and work product of hospital quality assurance committees “promote [s] the quality of care through self-review without fear of legal reprisal”
 
 (Katherine F. v State of New York,
 
 94 NY2d 200, 205 [1999] [discussing Education Law § 6527 (3)]). Furthermore, such protections “ ‘enhance the objectivity of the review process’ ” and ensure that the committees “ ‘may frankly and objectively analyze the quality of health services rendered’ ”
 
 (Logue v Velez,
 
 92 NY2d 13, 17 [1998] [quoting Mem of Assembly Rules Comm, Bill Jacket, L 1971, ch 990, at 6, pertaining to the privilege amendment to Education Law § 6527 (3)]). The cloak of confidentiality covering quality assurance procedures and materials “is designed to encourage thorough and candid peer review * * * and thereby improve the quality of * * * care”
 
 (id.).
 

 Here, the parties agree that the clinical records of residents in these facilities are not privileged under the federal statute
 
 [2]
 
 and, thus, such records do not acquire quality assurance protection merely because they are reviewed or used by a quality assurance committee. Similarly, the parties do not dispute that
 
 *440
 
 the work product of quality assurance committees is entitled to protection under 42 USC § 1396r (b) (1) (B) (ii). The controversy in the case centers on what documents or reports constitute “records of such committee” (42 USC § 1396r [b] [1] [B] [ii]).
 

 The documents at issue can be described as having two distinct origins: some of the records are maintained by nursing homes in compliance with federal or state regulations and may be utilized by quality assurance committees, while other records are created or generated for quality assurance purposes. As to the former, nursing homes are required by federal and state regulations to establish an infection control program under which they maintain “a record of incidents and corrective actions related to infections” (42 CFR 483.65 [a] [3];
 
 see also
 
 10 NYCRR 415.19 [a] [3]; [d]). In like manner, state regulations obligate nursing homes to keep and produce, upon request, “an accident and incident record which shall include a clear description of every accident and any other incident involving behavior of a resident or staff member that poses a threat to a resident or staff member * * *” (10 NYCRR 415.30 [f]). These requirements are imposed on nursing homes generally and have no express relationship to quality assurance procedures.
 

 Petitioner submits that the infection control reports and incident/accident reports are exempted from disclosure, notwithstanding these general regulatory directives which are not tied to the quality assurance function, because its quality assurance committees generated and utilized the reports. We disagree.
 

 Where facilities are compelled by a statutory or regulatory dictate to maintain a particular record or report that is not expressly related to quality assurance, the fact that a quality assurance committee reviews such information for quality assurance purposes does not change the essential purpose of the document. A facility may not create a privilege where none would otherwise exist merely by assigning the duty for compliance or compilation to a quality assurance committee. We therefore agree with the Appellate Division that petitioner must release the infection control and incident/accident reports, and we affirm that portion of the Appellate Division order directing disclosure of those records.
 

 With respect to the records not maintained pursuant to statutory or regulatory mandate — the monthly skin condition and pressure sore reports, the monthly weight reports and the
 
 *441
 
 lists of facility-acquired infections — petitioner similarly claims that these records are exempt from disclosure under the federal statute. Relying on the standard articulated by the Supreme Court of Missouri in
 
 State ex rel. Boone Retirement Ctr., Inc. v Hamilton
 
 (946 SW2d 740 [Mo 1997]), petitioner requests that we protect any records generated by its quality assurance committees. In
 
 Boone,
 
 the operator of a skilled nursing facility sought to quash a criminal grand jury subpoena pertaining to records “ ‘generated by or presented to’ ” its quality assurance committee
 
 (id.
 
 at 741). Determining that the scope of the privilege afforded under the federal statute was “exceedingly narrow,” the Missouri court concluded that the records created by the committee were protected but that the privilege did not extend to materials “generated or created by persons or entities operating outside the quality assurance committee” and submitted to the committee for its review
 
 (id.
 
 at 743). Although it does not ask us to reject the rule of
 
 Boone,
 
 MFCU argues that because the documents contain information derived from individual clinical records they are therefore subject to subpoena in the same manner as the underlying clinical records.
 

 While we agree with the Missouri court and petitioner that the federal protection is narrow, we decline to adopt the
 
 Boone
 
 standard because the federal statute does not restrict quality assurance records to only those reports created by quality assurance committee members themselves. We read the language “records of such committee” (42 USC § 1396r [b] [1] [B] [ii]) as encompassing within its parameters any reports generated by or at the behest of a quality assurance committee for quality assurance purposes. Of course, where the committee simply duplicates existing records from clinical files, no privilege will attach. However, compilations, studies or comparisons of clinical data derived from multiple records, created by or at the request of committee personnel for committee use, are “records of such committee” and are entitled to protection from disclosure pursuant to federal law.
 

 Applying this standard, we conclude that the three remaining categories of documents are privileged records of the quality assurance committees. Dawn Clabeaux, a member of the quality assurance committee at the Aurora Park facility, averred that these documents are “internal working papers generated by members of the team, essential to the quality assurance process” and are used by the committees at all three facilities to fulfill their quality assurance obligations. More
 
 *442
 
 over, MFCU does not claim that any specific statute or regulation requires the facilities to maintain these particular reports independent of quality assurance assessment.
 
 [3]
 
 We therefore modify the Appellate Division order by granting petitioner’s motion to quash the grand jury subpoenas with respect to the monthly skin condition and pressure sore reports, the monthly weight reports and the lists of facility-acquired infections.
 

 For the future, we recommend that a party seeking to protect documents from disclosure compile a privilege log in order to aid the court in its assessment of a privilege claim and enable it to undertake in camera review. The log should specify the nature of the contents of the documents, who prepared the records and the basis for the claimed privilege
 
 (see e.g. United States v Construction Prods. Research, Inc.,
 
 73 F3d 464, 473 [2d Cir 1996],
 
 cert denied
 
 519 US 927 [1996]).
 

 Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Read concur.
 

 Order modified, etc.
 

 [1]
 

 . Petitioner has abandoned its state law privilege claims raised in the courts below.
 

 [2]
 

 . The question whether the grand jury may subpoena the clinical records is not before us on this appeal. The parties conceded at oral argument that the facilities’ clinical records were subject to these subpoenas and had already been disclosed.
 

 [3]
 

 . Although MFCU correctly contends that 42 CFR 483.20 (b) (1) (xii) requires skin condition to be included in comprehensive resident assessments, the federal regulation does not appear to mandate monthly reports of skin condition information on a facility-wide basis.