Bielewicz v Maplewood Nursing Home, Inc. (2004 NY Slip Op 24190)

Bielewicz v Maplewood Nursing Home, Inc.

2004 NY Slip Op 24190 [4 Misc 3d 475]

June 7, 2004

Supreme Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 13, 2004

[*1]
Sheryl S. Bielewicz, as Administrator of the Estate of Milton Sick, Deceased, et al., Plaintiffs,
v
Maplewood Nursing Home, Inc., Defendant.
Supreme Court, Monroe County, June 7, 2004

APPEARANCES OF COUNSEL

Lacy, Katzen, Ryen & Mittleman, LLP, Rochester (Jacqueline Thomas and Peter Rogers of counsel), for plaintiffs. Somerset Firm, LLC, Canandaigua (Margaret Somerset of counsel), for defendant.

{**4 Misc 3d at 476} OPINION OF THE COURT

Andrew V. Siracuse, J.
The motions in this case deal with discovery issues and a proposed amendment to the complaint. These questions, though sometimes contentious, rarely involve substantial legal questions. This case is an exception. It raises serious issues about the confidentiality of certain internal nursing home documents, and, as the defendant has argued, the proposed new cause of action based on Public Health Law § 2801-d would significantly transform nursing home liability.
The first major question presented in plaintiffs' motions is the discoverability of reports and documents prepared by the defendant nursing home's quality assurance committee. Practitioners in this field are well familiar with these bodies and with the statutory protection given their papers. The committees are governed in New York by article 28 of the Public Health Law, but that statute simply effectuates a federal scheme set out with respect to nursing homes in the Federal Nursing Home Reform Act (FNHRA) (Pub L 100-203, §§ 4201-4218).
An identical structure applies in hospitals, and the Court of Appeals has explained the general rule: documents of such committees are not discoverable under CPLR article 31; the[*2]"privilege which attaches to the proceedings and work product of hospital quality assurance committees 'promote[s] the quality of care through self-review without fear of legal reprisal' " (Matter of Subpoena Duces Tecum to Doe, 99 NY2d 434, 439 [2003], citing Katherine F. v State of New York, 94 NY2d 200, 205 [1999]).
In the Doe case, the documents at issue were not prepared for or by the quality assurance committee. Nor did the parties "dispute that the work product of quality assurance committees is entitled to protection under 42 USC § 1396r (b) (1) (B) (ii)"{**4 Misc 3d at 477} (id. at 439-440). In the present case, however, there is no doubt that the documents sought by the plaintiffs are in fact the work product of the defendant's quality assurance committee, and the issue concerns state law.
One might think that there could be no issue at all under these circumstances. As documents of a quality assurance committee, they are privileged; that is the general rule. The plaintiffs argue, however, that nursing home quality assurance committees are not entitled to the same privilege as hospital committees. They point to the Appellate Division decision in the Doe case (293 AD2d 231 [2002]).
In that decision the Fourth Department concluded that nursing homes were not included in the definition of "general hospital" in Public Health Law § 2801 (10) and were therefore not required to comply with that statute. Without a statutory mandate for the institution of quality assurance committees there would be no statutory privilege for their documents.
But this was not the only thing that the Fourth Department decided. The FNHRA, as amended in 1990, prohibits states from requiring disclosure of committee documents (see Matter of Doe, supra, 99 NY2d at 438-439). The Court noted this fact and went on to hold that the federal statute applied and that quality assurance committee documents were privileged under federal law. The particular documents at issue in that case were not prepared by the committee or solely for the committee, however, so they were therefore not privileged. This issue was not contested before the Court of Appeals.
The Fourth Department decision thus affirms that anything properly considered committee documents are protected by federal law. It would therefore seem that the entire dispute about the applicability of CPLR article 31 is a red herring. Since the documents at issue here are in fact work product of a quality assurance committee, the decisions of the Fourth Department as well as those of the Court of Appeals support the conclusion that the FNHRA prohibits the state from requiring their disclosure. The plaintiffs' motion in this regard should be denied.
But the dispute about the legal status of these committees under state law is worth some attention, because the Fourth Department seems to have reached a strange result in holding that Public Health Law § 2805-j does not apply to nursing homes. As noted above, the FNHRA requires that states impose the obligation of maintaining quality assurance committees on all {**4 Misc 3d at 478}nursing homes. The effective penalty for failure to comply with this mandate is the loss of Medicaid and Medicare funds. Although the Fourth Department refers to 10 NYCRR 415.27, which addresses nursing home quality assurance committees, those regulations were promulgated under article 28.[FN*] 

They would have no authority if the Public Health Law itself did not apply. [*3]The logic of the decision, then, is that New York State does not require nursing home quality assurance committees. But such committees are mandated by the FNHRA. If New York State does not require them, it would be in violation of federal law.
This would certainly come as a surprise to nursing homes, all of which dutifully convene such committees as if they were required to do so. It would likely surprise the Legislature as well. In fact, every relevant body in the state has continued to act as if New York were in compliance with the FNHRA.
The problem appears to be a simple error in the drafting of the legislation. The key section establishing quality assurance committees is Public Health Law § 2805-j. Subdivision (1) (j) of that statute reads: "For the purpose of this section, the term 'hospital' shall have the same meaning as is set forth in subdivision ten of section twenty-eight hundred one of this article."
Unfortunately, Public Health Law § 2801 (10) does not define "hospital." It defines "general hospital," a category that specifically excludes nursing homes. The definition of "hospital" in section 2801 is subdivision (1), and explicitly includes nursing homes in the term.
If section 2805-j is governed by the ordinary definition of "hospital," nursing homes are required to have quality assurance committees. If it deals only with what section 2801 calls "general hospitals," then it imposes no duty on nursing homes to do so. It is difficult to conclude, though, that the Legislature intended to comply with federal law in the case of what lay people call hospitals but where nursing homes were concerned it resolved to ignore the requirements of the FNHRA and leave patients unprotected.
Surely the Public Health Law should be interpreted so as to comply with federal law. It would be wrong, though, to go half {**4 Misc 3d at 479}way, and to hold that nursing homes are required to institute quality assurance committees, yet these committees are not entitled to the same privilege as those in general hospitals. It is all or nothing, and the court is mindful of the fact that the Court of Appeals in the Doe case clearly spoke of quality assurance committees as required for nursing homes. It must conclude that the committee here was acting pursuant to statutory mandate, however confusingly expressed, and that its records must be privileged.
The other major issue raised by the plaintiffs' motions is their request to add an additional cause of action under Public Health Law § 2801-d. That provision establishes a private cause of action for a violation of specified patient rights. The Fourth Department held in Goldberg v Plaza Nursing Home Comp. (222 AD2d 1082 [1995]) that it did not "create a new personal injury cause of action . . . when that remedy already existed" (222 AD2d at 1084), and defendants rely on this holding. They point out the impossibility of insuring against a statutory claim and the danger of financial disaster if every negligence claim were also framed as a violation of the Public Health Law.
In a later case, however, the same Court allowed such a claim because of the difficulty of recovery under common law. The additional holding arose in a case of some notoriety which [*4]sought recovery for the rape of a comatose nursing home patient by an employee of the home. As the Fourth Department pointed out, given the facts presented, there could be no action against the nursing home under theories of either respondeat superior or strict liability, nor was there a reasonable likelihood that the nursing home could be held liable on a theory of negligent hiring or negligent supervision of an employee (Doe v Westfall Health Care Ctr., 303 AD2d 102, 110 [2002]). "[T]he clear intent of section 2801-d was to expand the existing remedies for conduct that, although constituting grievous and actionable violations of important rights, did not give rise to damages of sufficient monetary value to justify litigation" (id. at 109).
This careful language shows that this exception was not meant to authorize a private cause of action in every negligence case. The present case, which involves a patient left unattended who drove his wheelchair into a location where he fell, presents a claim of negligent supervision of a patient, a well-recognized category of negligence. There is no difficulty with the plaintiffs' proof or any bar to recovery, if negligence is found, under standard common-law principles, nor any problem of damages. The Fourth {**4 Misc 3d at 480}Department did not overrule Goldberg in its later case, and under the facts of the present case it is the Goldberg precedent that this court must follow. The motion to amend the complaint is therefore denied.
The plaintiffs' motion additionally requests court-ordered depositions and certain other discovery material. The parties have agreed to have depositions ordered by the court, and these are to be held within 60 days of the date of this order unless good cause can be shown for a delay. The defendant has affirmed that no accident reports not furnished to the plaintiffs were prepared for ongoing treatment of Mr. Sick, as he was never returned to the nursing home after his fall. It has also stated that no written policies regarding tab alarms, patient falls, and similar issues existed at the time of the accident. The parties agreed at oral argument that these would be discoverable if (and only if) they referred to previous oral policies. The court has inspected these written policies and finds they contain no such references. They are therefore not discoverable.
The plaintiffs' motions are therefore denied with costs, in their entirety, except insofar as they sought court-ordered depositions.

Footnotes

Footnote *: The specific statutory authority for 10 NYCRR 415.27 is given as Public Health Law § 2805-k. That section deals with investigations prior to granting or renewing medical privileges at an institution. The ongoing review carried out by the quality assurance committees contemplated by 10 NYCRR 415.27 has little or no connection with the subject matter of section 2805-k. It is, however, the precise topic of section 2805-j.