Tucker, Richard T., J.
In this civil action the Administrator of the Estate of Harold F. Boulette alleges that Harold F. Boulette was caused to suffer a fractured hip and thereafter die as a result of sepsis arising out of the fracture. It is alleged that his personal injury and death were a result of the negligent monitoring and supervision of Mr. Boulette’s care while a resident at the defendant nursing home. Specifically, the plaintiff alleges that the defendants failed to properly administer, monitor and supervise out-of-bed breakaway alarms that were required by physician’s orders and hospital policies.
The instant motion arises out of the third request for production of documents to the defendant, in which the plaintiff seeks, inter alia, Quality Indicator reports relevant to the period of care at the defendant’s establishment in issue. Quality Indicators reports are surveys generated by the Massachusetts Department of Public Health. These surveys analyze information from individual patient profiles provided by care facilities called Minimum DataSets (“MDS”). MDS profiles contain information about individual patients’ health problems and care needs. The survey of the Quality Indicator measures, among other things, the prevalence of patient issues, such as in this case, the prevalence of falls and the incidents of new fractures, against a statewide average so that corrective actions can be implemented. It is these surveys of statistical analysis of the defendant nursing home against state averages that the plaintiff seeks in this request for production of documents.
Defendants object to the production of the Quality-Indicators, alleging that such documents are necessary to comply with risk management and quality-assurance programs required by federal law and the Massachusetts Board of Registration in Medicine and, as such, are confidential and not subject to discovery pursuant to the Health Insurance Portability and Accountability Act (HIPAA) regulations, G.L.c. 111, §205, and 42 U.S.C. §1396r(b)(l)(B).
After hearing and review of the memoranda of counsel, I find and rule as follows.

DISCUSSION

The court finds no privilege or confidentiality of the Quality Indicators under HIPAA regulations. These regulations protect medical records from unauthorized disclosure. The analysis and statistics of the Quality Indicators are not medical records. No patient’s identity is provided therein. There is no patient confidentiality right or interest in this analysis since the documents reveal nothing about nor mention anything concerning the care and treatment of any particular patient.
G.L.c. Ill, §205, states that
(b) information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees ... shall remain confidential, and not subject to subpoena, discovery or introduction into evidence In no event, however, shall records of treatment maintained pursuant to section seventy of this chapter, or incident reports or records of information which *373 are not necessary to comply with risk management and quality assurance programs established by the board of registration be deemed to be proceedings, reports or records of a medical peer review committee under this section.
This statute generally provides privilege from disclosure of those matters deemed necessary and utilized by peer review committees. As plaintiff argues, however, these privileges as set forth relate to “every licensed hospital or public hospital” that is “required to participate in risk management programs established by the board of registration in medicine.” G.L.c. Ill, §203. Nursing homes, however, are exempted from mandatory participation and reporting in risk management and quality assurance assessment programs. G.L.c. Ill, §203(b). Under §203(e) nursing homes are required only to report information concerning physician competence, physician employment history, physician disciplinary history, etc. This court finds, therefore, that G.L.c. Ill provides defendants with no privilege from production for discovery of the Quality Indicator reports requested in this case.
The defendants also claim a privilege under the Federal Nursing Home Reform Act, 42 U.S.C. 1396r(b)(l)(B). Federal law has applicability to these discovery requests since federal law governs all facilities that accept Medicaid or Medicare payments, as does the defendant facility. This statute requires in relevant part that

(B) Quality assessment and assurance

A nursing facility must maintain a quality assessment and assurance committee, consisting of the director of nursing services, a physician designated by the facility, and at least three other members of the facility’s staff, which . . .
ii Develops and implements appropriate plans of action to correct identified quality deficiencies. A State or the Secretary may not require disclosure of the records of such committee except and so far as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.
Despite the extensive reach of federal statutory requirements, a paucity of decisional law exists in interpreting this statute, and this issue appears to be one of first impression within the Commonwealth. Both counsel refer the court to State of Missouri ex. rel Boone Retirement Center, Inc. v. Hamilton, 946 S.W.2d 740 (M. 1997), and Matter of Subpoena Duces Tecum, Jane Doe, 99 N.Y.2d 434 (2003).
In Boone Ret. Ctr., the Missouri Supreme Court held that the privileges in 42 U.S.C. §§1395i and 1396r did not extend to “records and materials generated or created outside the [quality assurance] committee and submitted to the committee for review.” 946 S.W.2d at 743.
In Subpoena Duces Tecum, Jane Doe, the New York Court of Appeals rejected the Boone standard to the extent that it confined the scope of the privilege to only those reports created by quality assurance committee members themselves. 99 N.Y.2d at 441. The Court of Appeals read “records of such committee,” 42 U.S.C. §1396r(b)(l)(B)(ii), to encompass “any reports generated by or at the behest of a quality assurance committee for quality assurance purposes," including compilations, studies or comparisons of clinical data created for such purposes. Id.
This court concludes that the broader reading of the statutory privilege is the appropriate one, it being consistent with the general principle of cloaking quality assurance materials in confidentiality to encourage thorough and candid peer review. See id. at 439 (likening the policies behind extending a privilege to nursing home quality assurance committees to those behind extending a privilege to hospital-based quality assurance committees under the State Education Law). Although the Quality Indicator reports that the plaintiff seeks were not prepared “by or at the behest of’ Quaboag’s quality assurance committee, see id., the reports are generally compiled for the purpose of assisting nursing facilities in determining whether certain areas related to patients’ quality of care need to be addressed.[1] In this regard, Quality Indicator reports are not merely documents that are incidentally included in a nursing home’s quality assurance committee review process, but rather they are generated for the express purpose of aiding the committee in achieving its goals. See id. at 440. The fact that the reports are not made available to the public bolsters the conclusion that they are intended primarily for the benefit of quality assurance committees. (See Salvietti Aff., par. 7.)
In light of the foregoing, the court finds that the Quality Indicator reports are part and parcel of Quaboag’s quality assurance review process, and are thus protected from disclosure under 42 U.S.C. §1396r(b)(l)(B)(ii).[2]

ORDER

The plaintiffs motion to compel production of documents is DENIED.

While there is nothing in the affidavit of Quaboag’s administrator, Loren Salvietti, to indicate that Quaboag explicitly requests the Quality Indicator reports, Quaboag has vital input into the creation of the Quality Indicator reports inasmuch as they are generated using “Minimum Data Sheet” forms that Quaboag is required to submit to the Massachusetts Department of Public Health for quality assurance purposes. The reports, which compare Quaboag’s clinical data to statewide averages, are then available for review by Quaboag’s quality assurance committee. (Salvietti Aff., pars. 4 & 5.)

The parties have not briefed whether the quality assessment and assurance privilege inherent in the Federal Nursing Home Reform Act extends to requests by private parties for the production of documents to be used in civil litigation. Assuming for the purposes of this motion that the protection *374 applies to both state and private discovery requests, the court finds that the Quality Indicator reports are protected from disclosure. As stated previously, this Act requires in relevant part: “A State or the Secretary may not require disclosure of the records of such [quality assurance] committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph." 42 U.S.C. §1396r(b)(1)(B)(ii).