TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000045-MR

RICHMOND HEALTH FACILITIES-MADISON, LP,
D/B/A MADISON HEALTH & REHABILITATION
CENTER; PREFERRED CARE PARTNERS
MANAGEMENT GROUP, LP; PREFERRED CARE, INC.,
D/B/A PREFERRED CARE OF DELAWARE, INC.;
AND KENTUCKY PARTNERS MANAGEMENT, LLC                    APPELLANTS

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | CASE NO. 2014-CA-001634-OA |
|  | MADISON CIRCUIT COURT NO. 13-CI-00176 |

HONORABLE WILLIAM G. CLOUSE, JR.,
JUDGE, MADISON CIRCUIT COURT                              APPELLEE

AND

SHARON BRESHERS, AS
ADMINISTRATRIX OF THE ESTATE OF
GERALDINE McCAFFERTY, DECEASED          REAL PARTY IN INTEREST

AND                              2015-SC-000122-MR

EXTENDICARE, INC.; EXTENDICARE, L.P.;
EXTENDICARE HOMES, INC.; FIR LANE TERRACE
CONVALESCENT CENTER, INC., D/B/A MADISON
HEALTH & REHABILITATION CENTER;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.; AND
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.          APPELLANTS

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | CASE NO. 2014-CA-001710-OA |
|  | MADISON CIRCUIT COURT NO. 13-CI-00176 |

HONORABLE WILLIAM G. CLOUSE, JR.,
JUDGE, MADISON CIRCUIT COURT                              APPELLEE

AND

SHARON BRESHERS, AS
ADMINISTRATRIX OF THE ESTATE OF
GERALDINE McCAFFERTY, DECEASED          REAL PARTY IN INTEREST

## OPINION AND ORDER

Richmond Health Facilities-Madison, LP (Richmond Health) and Extendicare, Inc. (Extendicare)[1] petition this Court for a writ of prohibition to prevent the trial court from compelling the production of various documents associated with the care provided at the long-term-care facilities within their control. The Court of Appeals denied Richmond Health and Extendicare's petitions because it found no error in the trial court's decision to allow discovery of the documents; specifically, the court allowed discovery because the parties had failed to provide sufficient evidence that the Federal Quality Assurance Privilege (FQAP) applied to the documents in question. For reasons set forth below, we affirm the Court of Appeals and deny the issuance of a writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In 2012, Geraldine McCafferty was admitted to Richmond Health, a nursing facility owned and operated by Extendicare. But McCafferty's health rapidly deteriorated so she was transferred to the University of Kentucky Chandler Hospital after only a month's stay. Eventually, McCafferty passed away. Following McCafferty's death, Sharon Breshers, the Administratrix of McCafferty's estate, filed suit against Richmond Health and Extendicare, alleging wrongful death, nursing-home abuse, and corporate negligence. The gravamen of Breshers's claim is that Extendicare, in an attempt to boost profits, purposefully diverted necessary funds from Richmond Health; and, as a

---

[1] Various corporate iterations of both Richmond Health and Extendicare are involved in this writ action as co-defendants. For the sake of simplicity, we simply use "Richmond Health" and "Extendicare," singularly, to refer to the respective collection of defendants.

result, McCafferty was deprived of adequate medical care, which led to her death.

During discovery, Breshers sought the production of various documents relating to Richmond Health's clinical monitoring and oversight. In addition, Breshers requested documents dealing with corporate finance matters alleged to indicate Extendicare's negligence in funding Richmond Health. Of course, Richmond Health and Extendicare rejected Breshers's requests as an irrelevant fishing expedition for privileged information.

The trial court ordered Richmond Health and Extendicare to produce the requested financial documents and allegedly privileged information. In its order, the trial court did take certain precautions against the disclosure of any potentially private information by issuing a protective order covering patient and personnel files, as well as corporate accounting methodologies perhaps considered proprietary.

Richmond Health and Extendicare, co-defendants at the trial level, separately sought prohibitive writs from the Court of Appeals. Both parties argued the documents sought by Breshers were privileged under FQAP and, therefore, should not be produced. Additionally, Richmond Health and Extendicare argued their financial information was irrelevant and the trial court erroneously denied their request for a protective order. The petitions were heard by separate panels of the Court of Appeals, but the same result was reached. Both Richmond Health and Extendicare failed to produce a privilege log so each Court of Appeals panel held the petitions fell short of the high

3

burden involved when asserting a claim of privilege. Likewise, each panel held

financial information was relevant to Breshers's punitive-damages claim. As

for the protective order, the record indicated that Extendicare had already

disclosed the information the protective order sought to cover so its writ

petition was denied; and Richmond Health's panel held it had an adequate

appellate remedy with regard to the protective order so its petition was denied.

Operating separately yet again, Richmond Health and Extendicare now

petition this Court for a writ of prohibition under Kentucky Rules of Civil

Procedure (CR) 76.36(7)(a).[2]

## II. ANALYSIS.

When ruling on a writ petition, we must first determine if the writ is

appropriate. We review the merits of a writ petition and, in turn, the

soundness of a trial court's decision, only if a writ is a suitable remedy. The

issuance of a writ always lies within this Court's discretion.[3] Truly a

remarkable remedy, a writ action commands conservative use of that discretion

"to prevent short-circuiting normal appeal procedure[.]"[4] Accordingly, a writ

should issue only:

> [U]pon a showing that (1) the lower court is proceeding or is about
> to proceed outside of its jurisdiction and there is no remedy
> through an application to an intermediate court; or (2) that the
> lower court is acting or is about to act erroneously, although
> within its jurisdiction, and there exists no adequate remedy by

---

[2] Kentucky Rules of Civil Procedure (CR) 76.36(7)(a) reads: "An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."

[3] *Hoskins v. Maricle,* 150 S.W.3d 1, 5 (Ky. 2004) (citation omitted).

[4] *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky. 1961).

4

appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.[5]

Essentially, writs are divided into two classes. Richmond Health and Extendicare invoke the second class of writ as they argue the trial court acted erroneously within its jurisdiction. So our review is for abuse of discretion, *i.e.*, a decision that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[6] A writ will only issue within this writ class if a petitioner can prove irreparable injury, great injustice, *and* the absence of an appellate remedy.[7]

When faced with particular circumstances, we have excused the great-and-irreparable-injury element in order "to preserve the orderly administration of the laws."[8] These "certain special cases" exist where "a substantial miscarriage of justice will result if the lower court is proceeding erroneously[] *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration."[9] Our application of this exception is rare, however, limited primarily to circumstances where the "action for which the writ is sought would violate the law, *e.g.*[,] by breaching a tightly guarded

---

[5] *Hoskins*, 150 S.W.3d at 10.

[6] *See Tax Ease Lien Investments 1, LLC v. Commonwealth Bank & Trust*, 384 S.W.3d 141, 143 (Ky. 2012) (noting that standing is a question of law subject to de novo review); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004) (highlighting de novo review is typically appropriate under the first class of writs because jurisdiction is a question of law).

[7] *Hoskins*, 150 S.W.3d at 9 ("But if the petition alleged only that the trial court was acting erroneously within its jurisdiction, a writ would issue *only if* it was shown that there was no adequate remedy by appeal *and* great injustice and irreparable harm would otherwise occur.").

[8] *Ohio River Contract Co. v. Gordon*, 186 S.W. 178, 181 (Ky. 1916).

[9] *Hoskins*, 150 S.W.3d at 20 (quoting *Bender*, 343 S.W.2d at 801).

privilege or by contradicting the requirements of a civil rule."[10] Of course, Richmond Health and Extendicare argue the instant situation constitutes a "certain special case." We disagree.

## A. The Production of Financial Information was Properly Compelled.

Initially, Richmond Health and Extendicare argue the Court of Appeals erred in allowing the trial court to compel the production of the financial information requested by Breshers. The main point of Richmond Health's and Extendicare's argument is that the financial information sought by Breshers is irrelevant and, in turn, irreparably harmful.

We do well to remind Richmond Health and Extendicare that CR 26.02, our rule governing the permissible scope of discovery in civil litigation, trends toward discovery, permitting discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."[11] Relevancy "is more loosely construed upon pre-trial examination than at the trial, and the Rule requires only relevancy to the subject matter involved in the action."[12] The Court of Appeals found the challenged financial information was relevant to Breshers's claim for punitive damages. We agree but, more importantly, the financial information of Richmond Health and Extendicare Breshers seeks is central to her entire negligence claim. We are at a loss for how corporate financial information could be irrelevant to a claim asserting deliberate withholding or manipulation of funds.

---

[10] *Grange Mut.*, 151 S.W.3d at 808 (quoting *Bender*, 343 S.W.2d at 801).

[11] *Maddox v. Grauman*, 265 S.W.2d 939, 941 (Ky. 1954).

[12] *Id.*

6

Considering that the information is clearly relevant, we see no way in which Richmond Health or Extendicare would suffer irreparable injury or satisfy to any degree the requirements for the application of our certain-special-cases exception. There is no great injustice or substantial miscarriage of justice in compelling a party to produce clearly relevant information. We affirm the Court of Appeals.

## B. The Court of Appeals Appropriately Denied Richmond Health's and Extendicare's Request for a Protective Order.

At the Court of Appeals, both Richmond Health and Extendicare sought a protective order for the disclosure of their financial information. In Richmond Health's case, the Court of Appeals denied the protective-order request because it found there was an adequate remedy on appeal, citing *Hoffman v. Dow Chemical Co.*[13] As for Extendicare, the Court of Appeals found that "the information Extendicare sought to have protected has already been disclosed to Breshers" so a protective order was unwarranted. We agree.

A protective order is within the full discretion and authority of the trial court and is appropriate only to prevent a party from "annoyance, embarrassment, oppression, or undue expense or burden."[14] Notably, the trial court did, in fact, enter a protective order. In doing so, the trial court properly gave due weight to Breshers's discovery request while balancing—or attempting to at the very least—Extendicare's and Richmond Health's desire or need to keep corporate matters out of the public domain. Extendicare and Richmond

---

[13] 413 S.W.2d 332, 334 (Ky. 1967).

[14] *Ewing v. May*, 705 S.W.2d 910, 913 (Ky. 1986).

7

Health remain unhappy with the scope of the trial court's protective order. Be that as it may, Extendicare and Richmond Health present no colorable argument as to why exactly the protective order should be broadened. As we explain below with regard to FQAP, Extendicare's and Richmond Health's tactic of making broad allegations of imminent harm or entitlement to relief are unavailing as they afford us little review capability. Given the record before us, we have no reason to doubt the trial court granted adequate relief as Extendicare and Richmond Health have presented nothing specific as to why the trial court's protective order was insufficient.

Perhaps a protective order would be appropriate if we were aware of what Richmond Health and Extendicare were trying to protect. Much like we discuss below with regard to the FQAP's scope, Richmond Health and Extendicare have simply failed to make any argument sufficient to meet the burden they carry in seeking a more expansive protective order. We are unwilling and—in light of the record—unable to conclude the trial court abused its discretion. Extendicare and Richmond Health are not entitled to a writ, nor are they entitled to a protective order. We affirm the Court of Appeals on this issue.

## C. Richmond Health and Extendicare Fall Short of their Burden to Show the FQAP Privilege Applies.

Finally, Richmond Health and Extendicare argue that despite the financial information's supposed relevancy, FQAP renders it privileged. In an attempt to improve the quality of care afforded to nursing home residents,

8

Congress enacted in 1987 the Federal Nursing Home Reform Act (FNHRA),[15] of which FQAP was a subsection. Broadly, FQAP requires "skilled nursing facilit[ies]"[16] and "nursing facilit[ies]"[17] to establish a quality assessment and assurance committee in an attempt to ensure nursing homes are vigilant about the quality of care their residents are receiving. As for the privilege aspect, FQAP states: "A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph."[18] It is this provision Richmond Health and Extendicare now argue bars compliance with Breshers's discovery requests.

We have yet to have occasion to interpret FQAP's scope. In actuality, only two states and one federal court have had such an opportunity. From this paucity of case law, two rules have emerged: the Missouri Rule[19] and the New York Rule.[20] Richmond Health and Extendicare petition this Court to decide affirmatively between these two interpretations. Perhaps this is an important issue—no doubt it is enticing—but, for the reasons set forth below, we find it unnecessary to make the choice Richmond Health and Extendicare ask of us.

---

[15] *See* 42 U.S.C. 1396r, et seq.; 42 U.S.C. 1395i-3, et seq.; 42 C.F.R. 483, et seq.

[16] 42 U.S.C. 1395i-3(b)(1)(B).

[17] 42 U.S.C. 1396r(b)(1)(B).

[18] 42 U.S.C. 1395i-3(b)(1)(B).

[19] *See State ex rel. Boone Ret. Ctr. v. Hamilton*, 946 S.W.2d 740 (Mo. 1997) (en banc).

[20] *See In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d 618 (N.Y. 2003).

Before the Court of Appeals, Richmond Health argued Breshers failed to provide "reasonable notice" of the motion to compel as CR 37.01 mandates.[21] According to Richmond Health's account, Breshers's motion was only provided to Extendicare. Richmond Health allegedly only received oral notice of the motion at the motion's hearing. The Court of Appeals rejected Richmond Health's argument, noting that the limited record provided no guidance; and, as a result, it was impossible to "determine if the issue of lack of notice was brought to the attention of the trial court." Faced with a silent record on the issue, the Court of Appeals followed our precedent and presumed the trial court's decision was supported by the record. If Richmond Health truly received unreasonable notice of Breshers's motion, it should have produced the record of the hearing. After all, in a writ action—an original action at an appellate court—it is even more important to preserve properly the record because, contrary to normal appellate procedure, "the trial court's record is unavailable[; and, instead, the appellate record] consists only of what the parties have included with their filings."[22]

Richmond Health can offer no evidence to support its argument that Breshers did not provide "reasonable notice" of her motion to compel. It was this alleged lack of notice, though, that Richmond Health argues prohibited it from producing a privilege log or, for that matter, any form of documentation identifying *what* FQAP should apply to. Extendicare likewise did not produce a

---

[21] CR 37.01 ("A party, *upon reasonable notice* to other parties and all persons affected thereby, may apply for an order compelling discovery as follows: . . . .") (emphasis added).

[22] *Collins v. Braden*, 384 S.W.3d 154, 163 (Ky. 2012).

10

privilege log or any sort of documentation about the allegedly privileged documents, but Extendicare did receive notice of Breshers's motion to compel.

It is axiomatic that a party who asserts a privilege bears the burden of proving the privilege applies.[23] Equally fundamental and uncontested is the principle that testimonial privileges are disfavored and should be strictly construed.[24] To put it simply, both Richmond Health and Extendicare have failed to carry their burden to show that FQAP applies, under *any* standard— Missouri or New York Rules aside. We have previously rejected a writ petition to protect a claimed privilege where "the record before us was insufficient to permit a determination whether any or all of the [documents we]re subject to the . . . privilege."[25] Neither Richmond Health nor Extendicare has sought in-camera review of the documents or produced an even relatively detailed description of what the documents contain. So we are left with nothing more than Richmond Health's arguments about the documents—a level of evidence we have previously deemed insufficient.[26] Based on the record before us, we are unwilling to say the trial court acted erroneously in granting Breshers's motion to compel.

---

[23] *Stidham v. Clark*, 74 S.W.3d 719, 725 (Ky. 2002).

[24] *Id.* at 722.

[25] *Collins*, 384 S.W.3d at 163 (quoting *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 63 (Ky. 2002)).

[26] *Id.* at 163-64 ("All we have to go on is the hospital's argument about the content of the documents. . . . Without more certainty about the content of those documents, a reviewing court cannot determine whether any statements are even in the documents or whether any statements are covered by the privilege.").

11

Judicial restraint, rather than reaching into the somewhat murky FQAP world, is the proper elixir for this case. Again, even if we were to select a rule governing the application of FQAP, there is nothing to which to apply it. Richmond Health and Extendicare have given the courts nothing more than vague references to documents (most likely to obtain a broad discovery prohibition) and then requested we perform the spectacular task of secreting them away from Breshers. It bears repeating that blanket assertions of privilege are not sufficient.

We reject the writ petitions—they do not meet our writ standard and, in our estimation, would be nothing more than advisory. Essentially, Richmond Health's and Extendicare's arguments are not properly preserved for our review—indeed, there is nothing to review. A writ is an extraordinary remedy, and this Court will not initiate the practice of using writs to save parties from their own litigation stumblings.

## III. CONCLUSION.

We affirm the denial of the writs by the Court of Appeals.

All sitting. Minton, C.J.; Abramson, Noble, and Keller, JJ., concur. Barber, J., concurs in result only by separate opinion in which Cunningham and Venters, JJ., join.

BARBER, J., CONCURRING IN RESULT ONLY: Because this subject matter will likely come back up in this and other cases, I would go a step further than the majority and analyze the application of the FQAP.

12

As part of the Omnibus Budget Reconciliation Act of 1987, Congress enacted the Federal Nursing Home Reform Act ("FNHRA") to "improve the quality of care for . . . nursing home residents." Pub. L. No. 100-203, §§ 4201-4218; H.R. Rep. No. 100-391, pt. 1, at 452 (1987). At issue in this case is a subsection of FNHRA, the Federal Quality Assurance Privilege—42 U.S.C. Sections 1395i-3(b)(1)(B) (skilled nursing facilities) and 1396r(b)(1)(B) (nursing facilities)—which respectively provide:

> A [skilled] nursing facility must maintain a quality assessment and assurance committee, consisting of the director of nursing services, a physician designated by the facility, and at least 3 other members of the facility's staff, which (i) meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary and (ii) develops and implements appropriate plans of action to correct identified quality deficiencies. A State or Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.

42 U.S.C. § 1395i-3(b)(1)(B). The purpose of the FQAP is to "protect the [Quality Assurance] committee's own records—its minutes or internal working papers or statements of conclusion—from discovery." *Jewish Home of E. PA v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 362 (3d Cir. 2012). The goal is to engender self-critical analysis and ultimately, improve the quality of nursing home residents' health care.[27]

---

[27] I do agree—subject to a caveat—with Appellants' statement that "[t]he Federal Quality Assurance Privilege is intended to allow a health care provider self-critical analysis with the goal of improved care without fear of the process being used to punish the health care provider." However, "fear of reprisal" is by no means absolute, and must be balanced with the FNHRA's ultimate goal of "improv[ing] the quality of care for . . . nursing home residents." H.R. Rep. No. 100-391, pt. 1, at 452 (1987).

## A. Scope of the FQAP

This Court has yet to address the scope of the FQAP. Two state supreme courts and one federal appellate court, however, have addressed the issue—albeit reaching differing conclusions. The Missouri Supreme Court and the U.S. Court of Appeals for the Third Circuit narrowly construed the FQAP to only privilege documents that are "generated" by a nursing home's quality assurance committee. *See Jewish Home of E. PA v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 362 (3d Cir. 2012); *State ex rel. Boone Ret. Ctr. v. Hamilton*, 946 S.W.2d 740, 743 (Mo. 1997) (en banc). The New York Court of Appeals extended *Boone's* holding to privilege all documents created "by or at the behest of" a nursing home's quality assurance committee. *See In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d 618, 623 (N.Y. 2003). I would adopt the former approach and hold that only documents generated by a nursing home's quality assurance committee fall within the scope of the FQAP. "This statutory privilege is exceedingly narrow." *Boone*, 946 S.W.2d at 743.

## B. The "Missouri" Approach

The Supreme Court of Missouri, and subsequently the U. S. Court of Appeals for the Third Circuit, each narrowly construed the FQAP. *See Jewish Home*, 693 F.3d at 362; *Boone*, 946 S.W.2d at 743. Both courts limited the scope of the statute by holding that only reports which are "generated" by a nursing home's quality assurance committee are covered by the FQAP. *See Jewish Home*, 693 F.3d at 362 ("The language of 42 U.S.C. § 1396r(b)(1)(B) . . . limits the scope of protection from discovery to the records *generated* by the Quality Assurance Committee.") (emphasis added); *see also State ex rel. Boone*,

14

946 S.W.2d 740, 743 (finding that the FQAP "protects only the committee's own records—its minutes or internal working papers or statements of conclusions from discovery.").

Following the Supreme Court of Missouri, the Third Circuit—the only federal appellate court which has construed the scope of 42 U.S.C. § 1396r(b)(1)(B)—held that the FQAP "limits the scope of protection from discovery to the records *generated* by the Quality Assurance Committee." *Jewish Home,* 693 F.3d at 362 (citing *Boone,* 946 S.W.2d at 743) (emphasis added). Quoting the Missouri Supreme Court, the Third Circuit agreed that "[n]o honest reading of the statute . . . can extend the statute's privilege to records and materials generated outside the committee and submitted to the committee for its review." *Jewish Home,* 693 F.3d at 362. I agree.

In *Jewish Home,* the documents in question were "contemporaneous, routinely-generated incident reports that were part of the residents' medical records." *Id.* Because these documents were not "minutes, internal papers, or conclusions generated by the Quality Assurance Committee," the Third Circuit held that the documents were not protected by the FQAP. *Id.* Likewise, the documents Breshers seeks to discover do not fall within the scope of the FQAP because they were not generated by Appellants' Quality Assurance Committee, nor are they minutes, internal papers or conclusions of the Quality Assurance Committee. *Id.*

## C.  The "New York" Approach

New York's highest court[28] opted for a broader interpretation of the

FQAP.  *See In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d 618,

623 (N.Y. 2003) ("We read the language 'records of such committee' (42 U.S.C.

§ 396r[b][1][B][ii]) as encompassing within its parameters any reports generated

by or at the behest of a quality assurance committee for quality assurance

purposes."); *see also id.*  ("[C]ompilations, studies or comparisons of clinical

data derived from multiple records, created by or at the request of committee

personnel for committee use, are 'records of such committee' and entitled to

protection from disclosure pursuant to federal law.").  Applying this standard,

the Court of Appeals of New York found that the FQAP protected the nursing

home's monthly skin condition reports, pressure sore reports, monthly weight

reports, and the list of facility-acquired infections—none of which were

generated by the quality assurance committee.  *Id.* at 623.

In *Jane Doe*, the parties agreed that the residents' clinical records were

not covered by the FQAP.  The court noted that "such records do not acquire

quality assurance protection merely because they are reviewed or used by a

quality assurance committee.  *Id.* at 622.  The parties additionally agreed that

the work product of the quality assurance committee was privileged by the

FQAP.  *Id.*  The controversy thus centered on "what documents or reports

---

[28] New York's court of last resort is the Court of Appeals of New York.  For the opinion, *see In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d 618 (N.Y. 2003).  Additionally, Appellants rely on a lower court decision from Massachusetts to bolster their argument in favor of a broad interpretation of the FQAP.  *See Evans v. Quaboag on the Common, Inc., et al.*, 26 Mass L. Rptr. 372 (Superior Ct. Mass Dec. 7, 2009).  We find neither of these cases controlling, nor convincing.

constitute 'records of such committee'" under 42 U.S.C. § 1396r(b)(1)(B)(ii). *Id.*

The petitioner therein argued that because the nursing home's incident

reports, infections reports, and the like were derived from clinical records that

were not privileged by the FQAP, they should likewise not fall within the ambit

of the FQAP. *Id.* at 623. Ultimately, the court determined:

> While we agree with the Missouri court and petitioner that the
> federal protection is narrow, we decline to adopt the *Boone*
> standard because the federal statute does not restrict quality
> assurance records to only those reports created by quality
> assurance committee members themselves. We read the language
> "records of such committee" (42 USC § 1396r [b][1][B][ii]) as
> encompassing within its parameters any reports generated by or at
> the behest of a quality assurance committee for quality assurance
> purposes.

*Id.* I disagree. Extending the FQAP to encompass *any* reports generated "at

the behest of" a nursing home's quality assurance committee has troubling

implications.[29] It runs headlong into decades of Kentucky and federal

jurisprudence that have narrowly construed the scope of privileges.[30]

Furthermore, I am not convinced by Appellants' conjecture that the quality of

nursing home care will decline for fear of litigation if this Court were to adopt a

narrow construction of the FQAP.[31] I recognize that the purpose of the FQAP is

---

[29] Not the least of which is what precisely does "at the behest of" mean.

[30] Kentucky has traditionally allowed a very limited number of privileges. *See, e.g.,* KRE 501-11. For example, this Court recently declined to recognize a physician-patient privilege. *See Caldwell v. Chauvin,* No. 2014–SC–000390–MR, 2015 WL 3653447, at *1 (rendered June 11, 2015).

[31] Of note, we have rejected a similar argument in the context of the peer-review privilege and medical negligence claims. *See Sisters of Charity Health Sys., Inc. v. Raikes,* 984 S.W.2d 464, 470 (Ky. 1998); *see generally* KRS 311.377(2).

17

to encourage self-critical analysis; however, the ultimate goal is to "improve the quality of care for . . . nursing home residents." H.R. Rep. No. 100-391, pt. 1, at 452 (1987). Thus, as previously noted, Appellants' "fear of reprisal" is by no means absolute, and must be balanced against the fundamental objective of the FQAP—improving quality of care. In that vein, I believe that *Boone's* construction more accurately reflects Congress's intent to privilege a narrow set of information, and allows self-critical evaluation without overprotecting—under the auspice of "quality control"—information such as that at issue in the case at bar.

Moreover, although Appellants rely heavily on *Jane Doe's* holding, they failed to take heed of the New York court's warning: "[f]or the future, we recommend that a party seeking to protect documents from disclosure compile a privilege log in order to aid the court in its assessment of a privilege claim." *Id.* The Court of Appeals rejected Appellants' position for this very reason. Additionally, despite Appellants' *ipse dixit* argument to the contrary,[32]

---

[32] Appellants argue that the FQAP preempts Kentucky's long held practice of strictly construing privileges, but cites no authority on point to bolster their contention. This however, should not be a point of contention, because the Court of Appeals readily acknowledged that the FQAP preempts state law. Court of Appeals Order at 7. Appellants simply claim that because the FQAP preempts state law, it must be broadly construed to privilege all quality assurance documents. *In re Jane Doe*, a case upon which Appellants heavily rely, does not support their assertion. *See In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d 618, 622 (N.Y. 2003) ("A facility may not create a privilege where none would otherwise exist merely by assigning the duty for compliance or compilation to a quality assurance committee."). The FQAP's broadest interpretation can be found in *In re Jane Doe*, but even New York's highest court limited the privilege to "any reports generated by or at the behest of a quality assurance committee." *Id.* at 623. Here, Appellants seek an even broader interpretation from this Court, and neglect to address the only federal case interpreting the FQAP, which supports a contrary construction. *See Jewish Home of E. PA v. Centers for Medicare and Medicaid Services*, 693 F.3d 359 (3d Cir. 2012).

18

privileges are strictly construed under both federal and Kentucky law.  *See Collins v. Braden*, 384 S.W.3d 154, 159 (Ky. 2012); *Sisters of Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 468 (Ky. 1998) (quoting *Trammel v. United States*, 445 U.S. 40, 45 (1980) ("Privileges should be strictly construed because they contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'")).  Appellants disregard established federal and Kentucky case law by arguing that the FQAP preempts Kentucky law, and hence, should not be strictly construed.  Confusingly, Appellants offer no federal authority in support of this contention, except to say that privileges should be determined on a case-by-case basis.  Furthermore, their argument disregards decades of Supreme Court jurisprudence that has narrowly construed privileges.  *See Trammel*, 445 U.S. at 50 (1980) (holding that privileges must be "strictly construed"); *id. at 50* ("Exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'") (quoting *U.S. v. Bryan*, 339 U.S. 323, 331 (1950)); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 411 (O'Connor, J., dissenting) (noting that the Supreme Court has historically construed the scope of privileges narrowly); *Jaffee v. Redmond*, 518 U.S. 1, 19 (1996) (Scalia, J., dissenting) (pointing to the Supreme Court's history of narrowly construing privileges); *Univ. of Pa. v. EEOC*, 493 U.S. 182 (1990) (narrowly construing common-law privilege).

The only case cited in support of Appellants' broad interpretation is *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, a Sixth Circuit opinion

19

which stands for the proposition that privileges should be determined on a "case-by-case" basis. *See* 333 F.3d 976, 979-80 (6th Cir. 2003). I do not disagree. However, *Goodyear Tire* is inapposite to the current controversy. The quoted language from *Goodyear Tire* is referring to the recognition of new privileges, not the construction of existing ones.[33] *Id.* at 980. Accordingly, in the absence of authority to the contrary, this Court should defer to the "fundamental principle that the public . . . has a right to every man's knowledge." *See Trammel*, 445 U.S. at 50 (internal quotation omitted). Privileges, being "in derogation of the search for truth," are not "expansively construed." *United States v. Nixon*, 418 U.S. 683, 710 (1974). The FQAP is no exception.

In *Boone* and *Jane Doe*, the high courts of Missouri and New York each readily acknowledged that they were dealing with a case of first impression that had yet to be settled by a federal court.[34] Since that time, however, the Third Circuit addressed the issue in *Jewish Home*, and adopted *Boone*'s narrow construction of 42 U.S. § 1396r(b)(1)(B), which "limits the scope of protection . . . to the records *generated* by the Quality Assurance Committee." *Jewish Home*, 693 F.3d at 362 (citing *Boone*, 946 S.W.2d at 743 (emphasis added)). For the reasons discussed herein, I agree and would adopt the narrow construction of the FQAP set forth in *Boone* and *Jewish Home*.

---

[33] *See Goodyear Tire*, 333 F.3d at 980 ("[T]he recognition of a privilege should be judged on a case-by-case basis and weighed against the public interest.").

[34] *See Boone*, 946 S.W.2d at 742 ("This is a case of first impression. No federal court has interpreted theses statutes); *In re Jane Doe*, 618 N.E.2d at 621 ("[N]either this Court nor any federal court has previously interpreted [the FQAP]).

20

Therefore, to the extent that the records sought to be discovered by Breshers were not generated by Appellants' Quality Assurance Committee, and are not "minutes or internal working papers or statements of conclusion," I would hold that they are not covered by the FQAP, and hence, are discoverable. *Jewish Home*, 693 F.3d at 362. Therefore, I would go further than the majority by adopting this application of the FQAP and would, thus, instruct the courts below to proceed accordingly.

Cunningham and Venters, JJ., join.

ENTERED:  October 29, 2015.

CHIEF JUSTICE